336      SWIFT *et al. v.* LEE *et al.*     [Sept. T.,

Syllabus.

# MILTON H. SWIFT *et al.*

*v.*

# LEVI LEE *et al.*

1. APPEARANCE—*sufficiency of proof to overcome evidence of the record showing.* Where the record of a suit by attachment recited the appearance of the defendant, by his attorney, and the entry of a written motion to dismiss the suit, and also a motion to continue the cause: *Held,* that if such an appearance of record could be limited, contradicted or explained, it would have to be done by clear and satisfactory evidence.

2. In such a case, where the attorney, shown to have appeared, by the record, testifies that he was not authorized to enter the defendant's appearance, but only appeared in his own behalf as garnishee, and that it was with dfficulty he could remember the circumstances; and where the written motions made showed an appearance to the action, and not to the garnishee proceeding; and where the opposing counsel were clear and positive that the attorney did appear to the action: *Held,* that the evidence, if admissible, was not sufficient to overcome the evidence afforded by the written motions and the recitals of the record.

3. LEVY—*sufficiency of description of land.* The certificate of a levy described the property as "two lots of land known as the house lot and mill lot of the within named A B, sections 19 and 20, township 42, north, range 4 east 3 P. M. De Kalb county." The certificate of purchase and sheriff's deed described the lots on section 20, where they were in fact situated: *Held,* that the description was sufficiently certain without the words, "sections 19 and 20," as the property could be identified by extrinsic evidence, and the words indicated would be rejected as surplusage.

4. Had the description been "two tracts of land of A B, one being that upon which he resides, the other that upon which his mill is situated," it would have been good, and any further and false description would be rejected.

5. DESCRIPTION—*surplusage.* In the description of lands in conveyances and judicial proceedings, it is held that if it can be made certain by rejecting that which is repugnant or false, it will be done so as to effectuate the intention of the grantor.

6. When land is described as a tract on which A's mill is situate, parol evidence is admissible to identify A's mill and show where it is, and where this is done the description will be held to embrace the entire tract upon which it is situated.

7. DEVISE—*description, whether sufficiently certain.* A testator, in his will, after devising certain property to his son, made a further devise, describing the subject in the following words: " and all my interest in a certain suit now pending in the De Kalb county circuit court, in which I am plaintiff and one Lee is defendant." The proof showed that there was a suit in which the testator and another person were plaintiffs and Lee and another were defendants: *Held,* that as no other suit between the same parties was shown to have been pending, it would be presumed that this latter named suit was the one to which the will referred.

8. SAME—*certainty required in.* Wills making devises are required only to be reasonably certain,—so certain only as to enable courts by fair and reasonable intendment to ascertain the meaning of the testator. The same strictness of interpretation will not be applied to them as to the venue of a writ or acknowledgment of a deed. Thus, where reference is made to a suit in the circuit court of De Kalb county, without naming the State, it will be held to mean the county by that name in Illinois, when it appears the testator resided in that county.

9. Where the testator claimed an undivided half of certain lands fully described in a suit by him and the owner of the other half of the title to avoid a fraudulent conveyance: *Held,* that a devise of all his interest in the suit was sufficient to pass his claim to the land in controversy in that suit.

10. FRAUDULENT CONVEYANCE. Where a defendant, after he was sued for a debt, conveyed his land to his brother-in-law, who resided in Ohio at the time, and who was a man of very limited means, and the sale was largely, if not altogether, upon credit, and many years after, it seems, nothing had been paid on the deferred payments, and it was proved that the grantee appointed the grantor his agent, and gave himself no trouble about the property afterwards; also that the grantee said the land was deeded to him without his knowledge at the time, and that he had nothing to do with it and should not have: *Held,* that these facts and other corroborating circumstances were sufficient evidence that the conveyance was made in fraud of creditors.

WRIT OF ERROR to the Circuit Court of DeKalb county ; the Hon. T. D. MURPHY, Judge, presiding.

Messrs. DIVINE & PRATT, for the plaintiffs in error.

Mr. CHARLES KELLUM, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a suit in equity, brought by plaintiffs in error in the De Kalb circuit court, against defendants in error, to

338          SWIFT *et al. v.* LEE *et al.*          [Sept. T.,

Opinion of the Court.

set aside a conveyance from Lee to Webster, alleged to have been fraudulently made. The conveyance embraced two hundred and forty acres of land. Plaintiffs in error claim to derive title under a judgment and execution against Lee and in favor of one Harris. The court below, on a hearing, dismissed the bill for want of equity.

It is not questioned that Lee held the fee simple title. A judgment was rendered against Lee, an execution was issued, a levy upon and sale of the premises were made thereunder by the sheriff, and a sheriff's deed to King and Ruggles, and a deed conveying his interest from Ruggles to Swift. King, the grantee of the sheriff, died, but made his will, by which it is claimed that he devised his interest in the land to John L. King, one of the plaintiffs in error.

It is insisted that the proceeding in attachment was void, and the sale under the execution issued on the judgment in that case conferred no title. The counsel for plaintiffs in error, however, contend that Lee entered his appearance to the attachment suit, and that the judgment was binding, as the court thus had jurisdiction of his person as well as of the subject matter. The record in that case recites the appearance of the defendant by his attorney, and the entry of a motion to dismiss the suit, and also a motion to continue the case. This is generally considered as conclusive evidence of an appearance. But the attorney who appeared testified that he was not authorized to enter Lee's appearance, and says he was himself garnisheed in the case, and only appeared on his own behalf. But he seems to think he did appear a year subsequently, when a motion was entered for leave to the sheriff to amend his return of the levy. The attorney says it was with difficulty that he could remember the circumstances, and his evidence is by no means clear and satisfactory.

If such an appearance of record can be limited, contradicted or explained, it would have to be done by clear and satisfactory evidence. Here we find an appearance to the suit, and not to the garnishee proceeding, and the attorney is not

able to explain satisfactorily how he came thus to appear, whilst opposing counsel is clear and positive that the attorney did appear and move to dismiss, and to continue the case generally, and is positive that Lee was in court at the time the motions were made. Again, the motions were reduced to writing, the various grounds for the same specifically set forth and were signed by the attorney. The evidence is not sufficient to overcome the written motions and the recitals of the record. There, then, being appearance to the action, the court undoubtedly had jurisdiction of the person of Lee, and the judgment, although in form, *in rem,* was valid and binding as a personal judgment.

It is next urged that the description of the land in the levy and sheriff's deed was insufficient to give jurisdiction over the land in controversy, because of its uncertainty. It is this: "The within writ served by levying upon two lots of land, known as the house lot and mill lot of the within named Levi Lee; sections 29 and 20, township 42, north, range 4 east of 3 P. M., De Kalb county, this 17th January, A. D. 1844." The return was subsequently amended by changing 29 to 19, by leave of the court. The levy of the attachment, as amended, the certificate of levy, the execution and the levy under it, all describe the lands as being in sections 19 and 20, but the certificate of purchase, the sheriff's deed, and subsequent conveyances describe the lots as being in section twenty.

It appears that Lee owned no land at the time of the levy in section nineteen, but owned what was known as his house lot and his mill lot in section twenty. Hence we see the sheriff, in the certificate of purchase, departing from all of the descriptions he had previously adopted in his various returns. The judgment had ordered the premises levied on to be sold, and we have seen the levy described the lands as being in both sections, and the command to sell, in the special execution, was of the same lands. Here was a departure from the order of the court and the command contained in the

340      SWIFT *et al. v.* LEE *et al.*      [Sept. T.,

Opinion of the Court.

execution. He was directed to sell two lots of ground situated in two sections, and he sold two lots in one of the sections. Can such sale be sustained so as to divest title? The material and all important question to be determined is, was the first and specific description sufficient, independent of the more general and explanatory description? Had it said two tracts of land of Lee, one being that upon which he resides, and the other that upon which his mill is situated, it is believed no person could have doubted that the description would have been sufficient, and the remainder of the false description could have been rejected.

In the description of lands, in conveyances and judicial proceedings, it is held that if it can be made certain by rejecting that which is repugnant or false, it will be done, so as to effectuate the intention of the grantor. *Myers* v. *Ladd*, 26 Ill. 415; *Blakeley* v. *Bestor*, 13 Ill. 708; *Miller* v. *Beeler*, 25 Ill. 163. If, then, we reject all reference to the sections in this description, we would have this: Two lots of land known as the house lot and mill lot of the within named Levi Lee, township 42, N., R. 4 E. 3 P. M.; and, from the authorities, we are warranted in treating this as the description.

Is, then, this a sufficient description? We think it is. Had the land been described as tracts of land, as farms, or as quarter sections, known as the house farm, etc., and the mill farm, etc., we presume there would be no difficulty in identifying the premises by extrinsic evidence, which is always admissible for that purpose; and we are of opinion that describing these tracts of land as lots renders the description such as to easily locate and identify the lands. The question is, where is the house lot? And when it is identified, then it must be held to embrace the entire tract upon which the house is situated, and so of the tract on which the mill is situated. The levy, judgment, execution and sheriff's deed, then, must be held to have passed the land to the grantee of the sheriff.

It is next objected that John L. King has no title to the premises in controversy. That depends upon the construction of the will of Daniel King. This is the clause of his will which, it is contended, devised the undivided half of the land in controversy:

" I also give and bequeath to my son, John L. King, the east half of the southwest quarter and the northwest quarter of the southeast quarter of section eleven, and the southeast quarter of the northeast quarter of section thirteen, all in township fifteen, north, of range nine east of the fourth principal meridian, containing in all one hundred and sixty acres ; also the sum of seven hundred and fifty dollars in cash, and all my interest in a certain suit now pending in the De Kalb county circuit court, in which I am plaintiff and one Lee is defendant."

It is first objected that the suit and the matter to which it related are not described with sufficient certainty in this clause of the will. It describes it as a suit in which he was plaintiff and one Lee is defendant. The proof shows that there was a suit in which King and Swift were plaintiffs, and Lee and Webster were defendants, and it appears that the suit related to the same land as that involved in this case, and the object of the suit was the same. As no other suit between the same parties is shown to have been pending, the strong presumption is that it was the suit to which reference was made. Daniel King was a plaintiff, but not the sole plaintiff, and Lee was a defendant, although there was a co-defendant. Although not a precise and accurate description of the suit then pending, we think it sufficiently specific to leave no reasonable doubt that it was the cause to which reference was made.

It is likewise urged that although the suit is described as pending in De Kalb county, no State being named, we can not know that the county referred to is in this State. We

find a suit was pending in that county in this State, and that will be presumed to be the county and suit referred to in the will, especially so as the testator resided in that county. We would not be justified in applying the same rule in the interpretation of a will that is applied to the venue of a writ or of the acknowledgment of a deed. Devises are not required to be certain to every possible intent. They are required only to be reasonably certain, so certain only as to enable us, by fair and reasonable intendment, to ascertain the meaning of the testator.

It is again urged that the language of the will is so vague and indeterminate as not to pass the title to testator's interest in the premises. The language is, "all of my interest in a certain suit now pending," etc. What was his interest in that suit? His claim to this land. No other interest was involved. He, in that suit, claimed that he owned an undivided half of the land in controversy, and nothing besides. Who, then, can doubt that he intended to devise to John L. King this land? It is true, that other and more specific language might have been, and no doubt would have been, used, had a skillful draftsman been employed in preparing the will, but nevertheless the intention to devise the land does appear, and that must be held to suffice, and 'that John L. King became invested with the title of Daniel King to the premises in controversy.

The remaining question presented by the record is, whether the evidence establishes the conveyance of the land from Lee to Webster to have been designed to hinder, delay or defraud the creditors of Lee. It appears they were brothers-in-law; that Webster was a man of limited means, was a blacksmith by trade, lived in Ohio at the time; he purchased largely, if not altogether, on credit, and seems many years afterwards to have paid nothing on the deferred payments. Again, the conveyance was made after this suit was brought, but before the amendment of the return was made; and Webster, after coming from Ohio and exercising acts of ownership over the

property for a year or two, returned to his small tract of land in Ohio, appointing Lee, a non-resident of this State, his agent to look after the property. And he seems to have given himself but little concern about the property or the rents, even declining to receive them from the agent when offered him on one occasion. Shumway seems to have been intimate with Webster, and says Webster frequently said to him that the land was deeded to him while he was in Ohio; that he knew nothing of it; that he had nothing to do with it, and should not have. This witness says, in the frequent conversations they had in reference to the premises in controversy, Webster never said that he had purchased them. When these and other corroborating circumstances are considered, we can entertain no doubt the conveyance was made to prevent Harris from collecting his debt.

In such cases we can not expect that more direct evidence can be had. The circumstances surrounding the transaction strongly tend to prove fraud; and if Shumway is to be credited, and his evidence is uncontradicted, Webster unequivocally admitted the fraud. That standing, as it does, confessed, the court below should have rendered a decree setting aside the sale, and for failing to do so, the decree dismissing the bill is reversed and the cause remanded.

*Decree reversed.*