LUCINDA WHITCOMB *et al.*

*v.*

EDWARD RODMAN *et al.*

*Filed at Springfield April 2, 1895.*

1. WILLS—*intention to dispose of whole estate presumed.* A testator will be presumed to have intended to dispose of his whole estate, unless the presumption is rebutted by the provisions of the will or evidence to the contrary.

2. SAME—*construction—false words of description stricken out.* While words cannot be added to a will in the construction thereof, yet in arriving at the intention so much as is false in a description may be stricken out, provided enough remains to identify the premises intended to be devised.

3. SAME—*devise of lands in wrong quarter section.* A testator devised parcels of land aggregating in all the exact acres owned, but in devises to two sons, respectively, described two forties, in the same section, adjoining those really owned, leaving the latter undisposed of: *Held,* on bill to construe, that said devises carried the adjoining forties owned, and that the two sons took undivided, and not several, interests therein.

4. EVIDENCE—*extrinsic, to remove latent ambiguity in will, competent.* Extrinsic evidence is admissible to determine as to the existence of latent ambiguity in a will, and enable the court to look upon the will in the light of the facts and circumstances surrounding the testator at the time it was made, for the purpose of determining his intention, although not to contradict or add to its terms.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. OWEN T. REEVES, Judge, presiding.

This was a bill brought by Edward L. Rodman, Joseph L. Rodman and Mary J. Rodman, against the heirs and other devisees of John Rodman, deceased, to construe the will of the deceased and to quiet title to certain lands alleged to have been devised by the will.

John Rodman died testate July 30, 1889. At the time of his death he owned in fee the north-west quarter of the north-east quarter of section 27; sixty acres off of the west side of the south-east quarter of section 22; the south-west quarter of the north-east quarter of section

22, and the south-east quarter of the north-east quarter of section 22, all in township 23, north, range 3, east, in McLean county. He left surviving him Mary Jane Rodman, his widow, and his only heirs-at-law, his children, Ann Eliza Boyce, Joseph L. Rodman, Edward L. Rodman, Lucinda Whitcomb, and his grandchild, Mary Eveline King, the sole heir and child of his deceased daughter, Margaret A. Craig. The will was executed October 17, 1888, and admitted to probate July 19, 1889, and was as follows:

"*First*—I will to my daughter, Ann Eliza Boyce, forty (40) acres of land, being the north-west quarter of the north-east quarter of section twenty-seven (27).

"*Second*—To my son Joseph L. Rodman I will and bequeath one hundred acres of land (100)—sixty acres (60) off of the west side of the south-east quarter of section twenty-two (22), forty acres (40) being the north-west quarter of the south-east quarter of section twenty-two (22).

"*Third*—To my son Edward L. Rodman I will and bequeath forty acres of land, being the north-east quarter of the south-east quarter of section twenty-two (22).

"*Fourth*—I give to my daughter Lucinda Whitcomb two thousand dollars ($2000).

"*Fifth*—To my granddaughter, Mary Eveline King, I give two hundred dollars ($200).

"The above legacies to be paid out of moneys and credits on hand and proceeds of the sale of personal property. All of the above land being in town twenty-three (23), north, range three (3), east of the third principal meridian."

The will contained a sixth clause, in which certain personal property was devised to the widow, and she was also given the control of the above described lands during her life.

It will be observed that the two forty-acre tracts, the south-west quarter of the north-east quarter of section

22, and the south-east quarter of the north-east quarter of section 22, owned by the testator, are not mentioned in the will, and that the testator never owned the north-east quarter of the south-east quarter of section 22, which is devised to Edward L. Rodman, and that the forty acres devised to Joseph L. Rodman lap on to the sixty acres already devised to him, and include the north thirty acres of the sixty acres, and that he did not own the east ten acres of the north-west quarter of the south-east quarter, which is devised to Joseph. The situation will be better understood by the following plats of the land, No. 1 being the land owned by the testator, and No. 2 that specifically named in the will:

The testator, when he executed the will and at the time of his death, was in the possession of the above lands, and owned no other.

The bill prayed for a construction of the will, and that the lands be held to have vested under the will, the south-east quarter of the north-east quarter of section 22 in Edward L. Rodman, and the south-west quarter of the north-east quarter in Joseph L. Rodman, and that the widow be held to have a life estate in all the lands. The answer practically admitted the facts set up in the bill, but denied that it was the intention of the testator to devise the two forty-acre tracts in the north-east quarter of section 22, or that the will was capable of that construction, and claimed that said lands descended as intestate estate. The court, on the hearing, decreed substantially as prayed for in the bill.

KERRICK, LUCAS & SPENCER, for plaintiffs in error :

We concede that "if there was a misdescription, if the misdescription can be stricken out and enough remains in the will to identify the thing, the court will deal with it in that way, or if it is an obvious mistake, will read it as if corrected." Complainants may go that far, but no farther. *Decker* v. *Decker*, 121 Ill. 353.

Likewise, "if a clause or expression be senseless or contradictory merely by reason of its position, the court may render it effective and consistent with the context by transposition, provided such change of the order really serves to bring out more clearly the intention of the testator ;" but that can only be done to effectuate an intention clearly expressed or indicated by the context. Beach on Wills, sec. 323.

These two positions are abundantly supported by the authorities. *Kurtz* v. *Hibner*, 55 Ill. 514; *Bishop* v. *Morgan*, 82 id. 351; *Bowen* v. *Allen*, 113 id. 53 ; *Decker* v. *Decker*, 121 id. 341; *Latham* v. *Latham*, 30 Iowa, 94; *Fitzpatrick* v. *Fitzpatrick*, 36 id. 674; *Cristy* v. *Bodgu*, 72 id. 581; *Augustus* v. *Seabolt*, 3 Metc. (Ky.) 155 ; *Patch* v. *White*, 117 U. S. 310 ; Jarman on Wills, (5th Am. ed.) 75-78 ; Beach on Wills, sec. 323 ; *Brown* v. *Saltonstall*, 3 Metc. (Mass.) 423 ; *Tucker*

v. *Seaman's Aid Society*, 7 Metc. 188 ; *Walston* v. *White*, 5 Md. 297; Pomeroy's Eq. Jur. sec. 871; 1 Redfield on Wills, (3d ed.) p. 497, sec. 5.

It is true, the will says the testator gives one hundred acres ; but it is a well settled rule in the construction of deeds and wills that quantity in a description of land is never allowed to control corners, distances, monuments or natural land marks.   *Kruse* v. *Scripps*, 11 Ill. 98; *Bishop* v. *Morgan*, 82 id. 351.

BENJAMIN & MORRISSEY, for defendants in error:

In every case calling for construction, the question of first importance is, what was the testator's intention? *Decker* v. *Decker*, 121 Ill. 354.

It is presumed that a testator, when he makes and publishes his will, intends to dispose of the whole of his estate, unless the presumption is rebutted by its provisions, or otherwise by evidence to the contrary.   *Higgins* v. *Dwen*, 100 Ill. 554; *Missionary Society* v. *Mead*, 131 id. 338.

Evidence *dehors* the will, as to facts and circumstances surrounding the testator, is admissible to correct, as to its effect, a mistake apparent on the face of the will, or to explain some latent ambiguity.   *Snyder* v. *Warbosse*, 3 Stock. Ch. 463 ; *Wood* v. *White*, 32 Me. 340 ; *Pocock* v. *Redinger*, 108 Ind. 573 ; *Creasy* v. *Alverson*, 43 Mo. 13 ; *Patch* v. *White*, 117 U. S. 210 ; *Decker* v. *Decker*, 121 Ill. 341; *Colcord* v. *Alexander*, 67 id. 581; *Mason* v. *Merrill*, 129 id. 503 ; *Moreland* v. *Brady*, 8 Ore. 303.

The words of the will may be interchanged or transposed to carry into effect the general intent of the testator.   Jarman on Wills, 503 ; *Ferry's Appeal*, 102 Pa. St. 210 ; *Ex parte Hornby*, 2 Bradf. (N. Y.) 420.

Mr. JUSTICE CRAIG delivered the opinion of the court:

In the construction of a will the important question always is, what was the intention of the testator?   As was well said by Chief Justice MARSHALL in *Kinlay* v. *King's Lessee*, 3 Pet. 346 : "The intent of the testator is

the cardinal rule in the construction of wills, and if that intent can be clearly perceived, and is not contrary to some positive rule of law, it must prevail, although in giving effect to it some words should be rejected, or so restrained in their application as materially to change the literal meaning of the particular sentence." See, also, *Decker* v. *Decker*, 121 Ill. 341.

It will be presumed that a person, when he makes and publishes a will, intends to dispose of his whole estate, unless the presumption is rebutted by its provisions or evidence to the contrary. (*Higgins* v. *Dwen*, 100 Ill. 554; *Missionary Society* v. *Mead*, 131 id. 338.) Upon an examination of the will in this case nothing will be found tending, in the least, to establish an intention on the part of the testator to leave any portion of his property to descend as intestate estate. On the other hand, in view of the property owned by the testator, it is manifest from the language of the will that the testator intended to devise his entire estate. When the will was executed, and at the time of the testator's death, he owned one hundred and eighty acres of land, and no more. Of this the testator, as is manifest from the will, attempted to devise one hundred acres to his son Joseph, forty acres to his son Edward, and forty acres to his daughter Ann Eliza Boyce, making one hundred and eighty acres,—all the land possessed by the testator. But while it is manifest that the testator intended to dispose of all the lands he possessed, yet the language of the will as found in the second and third clauses, if construed literally, as written, will defeat the plain intention of the testator. Shall that be done, or shall resort be had to extrinsic evidence to ascertain the real intent of the testator?

In the consideration of a question of this character in *Decker* v. *Decker*, *supra*, it was said : "While the general rule undoubtedly is that the intention of the testator is to be gathered from an inspection and consideration of the will, and from no other source, in case of latent am-

biguity courts do, and must, listen to extrinsic evidence, —not for the purpose of contradicting or adding to the terms of the will, * * * but for the purpose of determining the existence or non-existence of latent ambiguity, * * * and for the further purpose of enabling the court to look upon the will in the light of the facts and circumstances surrounding the testator at the time the will was made, whereby to determine the intention of the testator."

Wigram on Extrinsic Evidence in the Interpretation of Wills, after citing cases to prove that extrinsic evidence may be resorted to, says, "they might be multiplied without end," and adds: "They appear to justify the conclusion that every claimant under a will has a right to require that a court of construction, in the execution of its office, shall, by means of extrinsic evidence, place itself in the situation of the testator, the meaning of whose language it is called upon to declare." Quoted with approval in *Missionary Society* v. *Mead*, 131 Ill. 362.

In *Patch* v. *White*, 117 U. S. 210, it is said: "A latent ambiguity in a will, which may be removed by extrinsic evidence, may arise, first, either when it names a person as the object of a gift or a thing as the subject of it, and there are two persons or things that answer such name or description; or second, when the will contains a misdescription of the object or subject, as where there is no such person or thing in existence, or, if in existence, the person is not the one intended or the thing does not belong to the testator." After citing cases the court concludes: "By merely striking out the words 'six' and 'three' from the description of the will, as not applicable (unless interchanged) to any lot which the testator owned, * * * the residue of the description, in view of the context, so exactly applies to the lot in question that we have no hesitation in saying that it was lawfully devised to Henry Walker."

In *Moreland* v. *Brady*, 8 Ore. 303, in considering a question of this character, the court said: "We apprehend there can be no question of the admissibility of extraneous oral evidence to show the state and extent of the testator's property, in order to place the court in the same position the testator was in at the time he made the will in question. This, we think, is unquestionably the rule established by the decided cases. This being done, it appears that the testator had no such lots as those described as lots 1 and 2, in the particular block named. This renders it certain that the lots named were erroneous, and the words describing them can have no possible operation, and must be rejected."

In *Decker* v. *Decker*, *supra*, by the terms of the will the testator devised twenty acres off the west half of the north-east quarter of the north-east quarter of section 33, township 18, north, range 11, west. The evidence, however, showed that the testator never owned the north-east quarter of the north-east quarter of section 33, or any part of it, but he did own the north-west quarter of the north-east quarter of the section. It was held that there was a latent ambiguity in the devise, the descriptive words of the land devised being in part false, and that the false description might be stricken out and the devise sustained as embracing the land owned by the testator.

Keeping in view the foregoing rules of construction, it seems plain that the testator did not intend to leave the two forty-acre tracts in the north-east quarter of section 22 to descend as intestate estate. He in plain words devised to Joseph one hundred acres of land, and then follows with a particular description,—that is, sixty acres off of the west side of the south-east quarter of section 22, and forty acres, being the north-west quarter of the south-east quarter of section 22. Thereby the forty-acre tract was made to overlap the north thirty acres of the sixty acres which were to be a part of the one hun-

dred acres devised to Joseph. The east ten acres of the forty devised to Joseph the testator never owned, so that the general purpose to devise to Joseph one hundred acres would be defeated, and he would take but sixty acres under the devise, and the adjoining forty acres on the north of the sixty acres be left undevised, and the general intent for the disposition of the entire tract thus be defeated. It is also apparent that the purpose of the testator, as expressed in the will, was to give his son Edward L. Rodman forty acres of land. Indeed, the will says, "To my son Edward L. Rodman I will and bequeath forty acres of land." The land is then described as the north-east quarter of the south-east quarter of section 22,—land which the testator never owned. But he did own forty acres lying directly north of the forty-acre tract described, which was known as the south-east quarter of the north-east quarter of section 22. If the will is to be construed as contended for by plaintiffs in error, the devise of forty acres of land to Edward will be defeated entirely and the intention of the testator will be disregarded. If, therefore, by any of the recognized rules of construction the will may be so construed as to give the language of the testator effect, and thus carry out the evident intention not only to dispose of his entire estate, but to give to his sons, Joseph and Edward, the land intended to be devised to them, it is the duty of the court to adopt that construction.

Redfield on Wills (p. 469) says: "Where the testator misdescribes his estate, as being in different localities from the fact, putting one estate in the locality of another, and *vice versa*, it was held, that where sufficient appeared upon the face of the will, as applied to the subject matter, to show that such misdescription was a mere mistake, either in the testator or the person who drew up the will, that it would not have the effect to defeat the obvious intention of the testator."

While words cannot be added to a will, yet in arriving at the intention of the testator, as has been shown by the authorities, so much as is false in the description of the premises devised may be stricken out, and, after striking out the false description, if enough remains to identify the premises intended to be devised, the will may be read and construed with the false words eliminated therefrom. Adopting that rule here, the second and third clauses will read as follows:

"*Second*—To my son Joseph L. Rodman I will and bequeath one hundred acres of land (100)—sixty acres (60) off of the west side of the south-east quarter of section twenty-two (22), forty acres (40) being the............. quarter of the........quarter of section twenty-two (22).

"*Third*—To my son Edward L. Rodman I will and bequeath forty acres of land, being the............quarter of the...........quarter of section twenty-two (22)."

Bearing in mind that the testator owned two forty-acre tracts in the north-east quarter of section 22, and reading the two clauses of the will in the light of surrounding circumstances, we think all difficulty is removed in regard to the lands devised by these two provisions of the will. The testator, owning two quarters of a quarter of section 22, devised one quarter to his son Joseph and the other quarter to his son Edward, and the two sons took and held the two tracts undivided.

The circuit court, in its decree, held that the two forty-acre tracts were devised by the will, the south-west forty to Joseph and the south-east forty to Edward. In this respect we think the court erred, but as the error was one which did not affect plaintiffs in error, they having no interest whatever in the premises, the error was one which did no harm, and hence no ground for reversing the decree.

The decree of the circuit court will be affirmed.

*Decree affirmed.*