NANCY E. FELKEL, Appellant, vs. MARY O'BRIEN, Appellee.

*Opinion filed December 17, 1907.*

1. WILLS—*testator is presumed to have intended to die testate as to all his property.* It is presumed that a testator intended to dispose of his whole estate by his will in the absence of anything in the will to the contrary, and such presumption is strengthened by the absence of any residuary clause.

2. SAME—*the rule as to striking out false words of description.* Where a devise of land is clear on its face but it appears on inquiry that the description includes land not owned by the testator, if by striking out the false words of description enough remains, when read in the light of the circumstances surrounding the testator, to identify the land he intended to convey, the remaining portion of the description may be so read and the testator's purpose be given effect accordingly.

3. SAME—*when word "north" may be stricken from description.* Where it appears from a will that the testator intended to give his wife a life estate in all his property and to give the remainder-man the fee thereof, a devise to the wife, for life, of "the north half" of a certain quarter section, "containing eighty acres," may be corrected by striking out the word "north," leaving the devise to read "the half," where the evidence shows the testator did not own the west half of the north half described but that he owned the east half of such north half and the east half of the south half, which together make the eighty acres comprising "the half" which the testator owned.

FARMER, J., dissenting.

APPEAL from the Circuit Court of Montgomery county; the Hon. TRUMAN E. AMES, Judge, presiding.

Appellant, by her conservator, filed her bill in the circuit court of Montgomery county October 13, 1906, for the construction of the will of James McCeig. Said McCeig died August 6, 1901, and his will, which was duly probated in said county, provides: (1) To wife, Margaret McCeig, furniture, moneys, notes and accounts; (2) to said wife, Margaret, for and during her natural life, "the *north* half of the south-east quarter of section 27, * * * containing eighty acres, more or less;" also for her natural

life a homestead where said testator resided, in Hillsboro; (3) after the death of the said wife that "all the property described above and within be given to Nancy E. Felkel, * * * at present a member of my family." He left him surviving his widow, Margaret, but no child or children or descendants thereof. The only heir whose whereabouts was known was appellee, Mary O'Brien. The other heirs, if any such there were, were made parties as "unknown heirs." Margaret, the widow, died January 21, 1902.

It is conceded that at the time of making said will, and at his death, McCeig did not own the whole of the *north* half of the south-east quarter of said section but did own the *east* half of that quarter section, and had never owned any other portion of said quarter. Appellant in her bill asked that the word "north" might be stricken out and that she might be decreed the owner of the premises then described, to-wit, "the half of the south-east quarter" of said section, and that the court decree that half to be the east half. Appellee, Mary O'Brien, answered, admitting the allegations of the bill substantially so far as above set forth, but denying the testator intended to devise the east half of the south-east quarter in his will or give a life interest of the same to his widow or the remainder to appellant. She also filed her cross-bill, claiming that by said will said Mc-Ceig did not dispose of forty acres of the land, namely, the south-east quarter of the south-east quarter of said section; that said forty acres became intestate property; that she, (cross-complainant,) being the only living heir-at-law and a niece of said testator, was the owner of said forty acres, and asking that the court declare her such. Nancy E. Felkel and the unknown heirs answered by guardian *ad litem,* calling for strict proof. It was ordered that the original bill stand as an answer to the cross-bill. May 29, 1907, the court entered its decree, finding that appellant was not entitled to the relief sought for, and dismissed her bill; further finding that the equities were with the appellee as cross-

complainant, and that said forty acres was intestate estate, and that Mary O'Brien, as the only known living heir of McCeig, was the owner of the same; that the complainant in the original bill pay the costs. Appeal was thereupon taken to this court.

AMOS MILLER, for appellant.

JAMES W. GIBSON, and JETT & KINDER, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

In construing a will reference may be had to the surrounding circumstances for the purpose of determining the objects of the testator's bounty or the subject of disposition, to place the court, as far as possible, where it may interpret the language used from the standpoint of the testator. (*Lomax* v. *Lomax,* 218 Ill. 629; *Decker* v. *Decker,* 121 id. 341.) The evidence shows that appellant, when four days old, was taken by James McCeig and his wife to raise; that she is now forty-five years old, and lived with them during his life and afterwards with his wife until the latter's death. Obviously, from this record, appellant was always cared for and treated as their own child by testator and his wife. The paramount rule in the construction of wills is to ascertain the intention of the testator, and to give that effect if not contrary to some positive rule of law. (*Bradsby* v. *Wallace,* 202 Ill. 239; *Huffman* v. *Young,* 170 id. 290.) Clearly, it was the intention of the testator to give his wife a life estate in all his property. The cross-bill practically admits this. The will devised the remainder to appellant as to all the property in which the wife was given a life estate. When a person makes and publishes a will it will be presumed that he intends to dispose of his whole estate, unless the presumption is rebutted by its provisions or evidence to the contrary. (*Whitcomb* v. *Rodman,* 156 Ill. 116; *Boehm* v. *Baldwin,* 221 id. 59; *King* v. *King,* 168 id.

273; *Lewis* v. *Sedgwick,* 223 id. 213.) The fact that there was no residuary clause in this will strengthens this presumption.

Manifestly, from the evidence, as well as from the admissions in the answer and cross-bill, the testator never owned the north-west quarter of the south-east quarter of said section 27, but did own (in addition to the north-east quarter of said south-east quarter, which is included in the description in the will,) the south-east quarter of said south-east quarter of said section. Clearly, therefore, in this will there is a latent ambiguity. On the face of the will the devise is clear, but on inquiry it is found that the descriptive words of the devise are in part incorrect, land not belonging to the testator apparently being devised. In case of a latent ambiguity courts do, and must, listen to extrinsic evidence, not to contradict or add to the terms of the will, but to determine the existence or non-existence of the latent ambiguity, for such an ambiguity can only be shown by evidence *dehors* the will. (*Decker* v. *Decker, supra.*) "While words may not be added to a will nor inserted in lieu of other words stricken therefrom, yet if in a will there is a misdescription of the subject of a devise, and if, after striking out that portion of the description which is false, enough of the description remains, when read in the light of the circumstances surrounding the testator at the time the will was executed, to identify the property he intended to convey, the remaining portion of the description may be so read and the testator's purpose given effect." *Douglas* v. *Bolinger,* 228 Ill. 23.

In the authorities cited and relied on by the appellee, if the incorrect parts of the descriptions were stricken out it would be impossible to find from the description left, without inserting additional descriptive words not found in the will, what property the will described. These authorities have been discussed and distinguished in the *Douglas case, supra.* The facts and circumstances in that case are so

nearly like those in the case here under consideration that the rule of law there stated must control here.

Appellee attempts to distinguish this case from *Douglas* v. *Bolinger, supra,* by arguing that that case was heard on bill and demurrer, and that therefore the facts as stated in the bill were admitted, while here there was an answer and cross-bill. The essential facts admitted on this record are substantially identical with those stated in the bill in *Douglas* v. *Bolinger, supra. Decker* v. *Decker, supra,* was heard on bill and answer, as was also *Huffman* v. *Young, supra.* The facts being alike, the same principles of law govern, regardless of the different pleadings.

In this case, if we strike out the word "north" where it occurs before the word "half" in the clause under consideration, we have left a devise of "the half of the south-east quarter of section 27." On the facts in this record, viz., that the only land owned in that quarter by the testator was the east half of the quarter, and the will stating, in terms, that it was the intention and purpose of the testator to devise land "containing eighty acres," the devise will be given effect by striking out the false part of the description, viz., the word "north" where it is found in the description before the word "half" in the clause in question, and by so construing the will that the remaining portion of the description will be held to devise that half of the south-east quarter of said section 27 which was actually owned by the testator.

The decree of the circuit court is therefore reversed and the cause remanded, with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded.*

Mr. JUSTICE FARMER, dissenting.