SAMUEL G. CUMBERLEDGE, Appellant, *vs.* EMMETT BROOKS
*et al.* Appellees.

*Opinion filed June 18, 1908.*

1. CONTRACTS—*rule as to admission of extrinsic evidence to explain written contract.* A written contract must speak for itself as to the terms, conditions and limitations of the agreement, but as to the parties and subject matter of the contract extrinsic evidence is always competent, if necessary for their identification, without reference to the question of latent or patent ambiguity.

2. SAME—*description which may be rendered certain by extrinsic evidence is good.* A contract for the sale of land will not be held to be invalid for uncertainty of description of the land, if, from the words employed in the contract, the description can be rendered certain by extrinsic evidence.

3. SAME—*when a false description does not defeat a contract.* Where there are two descriptions in a contract, one of which describes the subject matter with reasonable certainty, and the other, giving some added particular, is incorrect, the incorrect particular of description will be rejected as surplusage.

4. SAME—*what constitutes a valid contract by letter.* An offer, by letter, to sell the proposed vendor's "undivided interest in the Chicago lots" for a certain sum, which is accepted, by letter, by the proposed vendee in the terms of the offer, constitutes a valid contract, even though the vendee in his letter stated that he understood the offer to refer to the five lots owned by the vendor and his sisters and the vendor replied that there were seven lots, and extrinsic evidence is admissible to identify the lots and to show that they were the only ones which the vendor owned with his sisters.

5. SPECIFIC PERFORMANCE—*when contract should be enforced.* While a court of equity will not enforce an unconscionable contract where there are circumstances of fraud, oppression or advantage taken, yet where the parties are competent to contract and have fairly contracted, neither should be relieved from the agreement because good business judgment was not used.

6. SAME—*when the inadequacy of consideration is no defense.* If a proposed vendor, after seeking the vendee unsolicited, makes a contract on his own terms, which he subsequently repudiates at the instance of a third party, who had notice of the contract, to whom he conveys the land for the same consideration, the defense of inadequate consideration cannot be interposed by either the vendor or his grantee in a proceeding for specific performance.

7. SAME—*when tender is unnecessary before filing bill.* No tender by the complainant in a bill for specific performance is neces-

sary before filing the bill, where the defendant has repudiated the contract and put it out of his power to comply therewith by conveying the land to a third party.

8. APPEALS AND ERRORS—*when decree cannot be sustained on the ground of variance.* A decree dismissing a bill for specific performance, after a hearing upon the merits, cannot be sustained, on appeal, upon the ground that there was a variance between the allegations and proofs, where such variance might have been obviated by amendment had it been suggested in the court below.

SCOTT and CARTER, JJ., dissenting.

APPEAL from the Superior Court of Cook county; the Hon. W. M. McEWEN, Judge, presiding.

The appellant filed his bill in the superior court of Cook county against appellees for the specific performance of an alleged contract for the sale of certain real estate. The appellee Emmett Brooks is the son, and appellant's wife, Gertrude Cumberledge, and Cora Brooks, are the daughters of William C. Brooks. In February, 1904, the three were the owners, as tenants in common, of five vacant lots in the city of Chicago, which were in four separate tracts in different parts of the city and had been conveyed to them by their mother, in 1893. Emmett Brooks had no interest in any other property in Chicago. He lived in Wharton county, Texas, William C. Brooks and his daughter Cora in Nevada, Missouri, and appellant and his wife in Muskogee, Indian Territory. Emmett Brooks and the appellant were each about forty years of age and William C. Brooks was about eighty-five. Emmett had never been in Chicago and knew nothing about the location of the lots or their value. Appellant had never lived in Chicago, but he was there with his wife in 1902, and with her called upon Mr. Galt, who had had charge of the property for many years. They learned from him the location of the various parcels of the property and saw them but did not discuss with him the question of value. The value of all the lots, as shown by the evidence, was $19,000. The appellant knew that this was practically Mr. Galt's estimate of the value of the prop-

erty and that Emmett Brooks was not acquainted with its value. On February 28, 1904, without any previous negotiations, conversation or correspondence, Emmett Brooks wrote to the appellant the following letter:

"IAGO, TEX., *2-28th, 1904.*

"DEAR SAM—I am going to dispose of my undivided interest in the Chicago lots. I would rather you or Gertie would buy than some outside party. If you would like to buy, will give you a bargain. Will take $1000. We are having fine weather; are about half through planting corn. Taylor has corn up. Clifton is at Batson oil fields with his teams, getting $5.00 per day for teams and drivers. I have gained ten pounds since you left, but took so much calomel my feet and hands are swollen and sore. My voice is about the same as when you were here. Father's health is very good. Thinks he will go home some time next month. Much love to you both.  (over)  EMMETT.

"I will take $500 down and balance next November."

Appellant replied as follows:

"MUSKOGEE, INDIAN TERRITORY, *March 2nd, 1904.*

"DEAR EMMETT—Yours of the 28th ult. to hand and hasten to reply, because I presume you want an early answer, so I concluded to accept your proposition and mail you check for $500 and on receipt of reply will send you paper for $500 that can be discounted, in case you need the money before Nov., '04, the time you mention. While I feel that you are making sacrifice, I am free to say that this property has been a detriment, and if the average man had owned it he would have sold at any price long ago. Gertie says I never think of birthday presents, so will try and surprise her this year. As I understand your proposition you sell undivided one-third interest in five lots in Chicago, now owned by Coco, Gertrude and yourself? Our trade is fair, weather fine, looks like early spring. Glad to know father is well. Gertie worries about him and is afraid he will come before spring is here. She has had grippe for two weeks, is better now. I did not tell her of your letter to-day, will to-morrow. Love to all.  CUMB."

To this letter the following response was received:

"IAGO, TEX., *Mar. 5th, 1904.*

"DEAR SAM—Yours of the 2nd to hand, with check. If you know the number of each lot and number of block send to me. If not, send me Galt's initials and number and I can get same from him. Then I will make out deed and forward to you. With love to both.  EMMETT."

"P. S.—There is seven lots."

The contract sought to be enforced is contained in these three letters, if any contract was made. Subsequently Emmett Brooks wrote to appellant that because of his father's objections he preferred to return appellant the money, with interest, and on May 14, 1904, he conveyed the premises for $1000 to his father, who had notice of appellant's rights.

After a hearing on the pleadings and evidence the court dismissed the bill for want of equity, and the complainant has appealed.

SCHMITT & WISE, for appellant:

The memorandum which is required by the Statute of Frauds to be in writing need not be comprised in a single instrument, and where the negotiations between the parties were conducted by correspondence, the court will look to the whole of the correspondence in order to determine whether there is such a memorandum in writing as will satisfy the Statute of Frauds. The only requirement is that it shall clearly appear from the correspondence that it all relates to the same subject matter. 29 Am. & Eng. Ency. of Law, 850; *Esmay* v. *Gorton,* 18 Ill. 483; *Telegraph Co.* v. *Railroad Co.* 86 id. 346; *Williams* v. *Smith,* 161 Mass. 248; *Freeland* v. *Ritz,* 154 id. 257; *Wilkinson* v. *Taylor Manf. Co.* 67 Miss. 231; *Fowler* v. *Fowler,* 204 Ill. 82; *Elevator Co.* v. *Cottrell,* 38 Neb. 512.

The memorandum in writing (whether it rest in one instrument or many) is sufficient if it identifies the parties, defines the terms of sale and contains a description of the premises which is certain or which is susceptible of being made certain. *McConnell* v. *Brillhart,* 17 Ill. 354; *Cossitt* v. *Hobbs,* 56 id. 231; *Fowler* v. *Fowler,* 204 id. 82; *Guyer* v. *Warren,* 175 id. 338; *Ullsperger* v. *Meyer,* 217 id. 262; *Koch* v. *Streuter,* 218 id. 546; *Colcord* v. *Alexander,* 67 id. 581.

A subsequent purchaser of real estate, if he had actual notice of a prior agreement by the vendor to sell, or if he

was aware of such facts as would put him on inquiry, is chargeable with notice of the rights of the party to such agreement. *Cox* v. *Milner,* 23 Ill. 422; *Erickson* v. *Rafferty,* 79 id. 209; *Shepardson* v. *Stevens,* 71 id. 646; *Clark* v. *Plumstead,* 11 Ill. App. 57; *Jones* v. *Glathart,* 100 id. 630; 2 Pomeroy's Eq. Jur. sec. 595, *et seq.;* 23 Am. & Eng. Ency. of Law, 494.

Such purchaser stands in the place of the vendor and can be compelled to specifically perform. *Doyle* v. *Teas,* 4 Scam. 202; *Forthman* v. *Deters,* 206 Ill. 159; *Fowler* v. *Fowler,* 204 id. 104; 1 Story's Eq. Jur. secs. 784, 789; Pomeroy on Specific Per. sec. 465.

GEORGE P. MERRICK, and ARTHUR T. GALT, for appellees:

The alleged contract does not satisfy the Statute of Frauds. *McConnell* v. *Brillhart,* 17 Ill. 354; *Cossitt* v. *Hobbs,* 56 id. 231; *Wood* v. *Davis,* 82 id. 311; *Kopp* v. *Reiter,* 146 id. 437; *Allen* v. *Bennett,* 16 Miss. 672; *Mellon* v. *Davison,* 123 Pa. St. 298; *Holms* v. *Johnston,* 59 Tenn. 158; *Miller* v. *Campbell,* 52 Ind. 125; *Boyd* v. *Paul,* 125 Mo. 14.

Specific performance of a contract to sell real estate will not be enforced unless the contract is (1) certain as to its terms; (2) fair and reasonable in all its parts; (3) certain and determinable as to subject matter without resort to extrinsic evidence; (4) for an adequate consideration; (5) mutually enforcible; (6) not entered into under a misapprehension of the facts or by mistake; and (7) is one in which complainant must have done everything as agreed. *Hamilton* v. *Harvey,* 121 Ill. 469; *Cloud* v. *Greasley,* 125 id. 319; *Winter* v. *Trainor,* 151 id. 191; *Clipson* v. *Villars,* 151 id. 165; *Maltby* v. *Thews,* 171 id. 264; *Glos* v. *Wilson,* 198 id. 44; *Tryce* v. *Dittus,* 199 id. 189; *Bauer* v. *Coal Co.* 209 id. 319; *Stubbings* v. *Durham,* 210 id. 549;

*Dreiske* v. *Eisendrath Co.* 214 id. 199; *Folsom* v. *Horr,* 218 id. 369; *Sutton* v. *Miller,* 219 id. 462.

Extrinsic evidence is inadmissible to explain a patent ambiguity in a contract for the sale of real estate. *Hamilton* v. *Harvey,* 121 Ill. 469; *Rampke* v. *Beuhler,* 203 id. 384; *Jordan* v. *Deaton,* 23 Ark. 704; *Taylor* v. *Allen,* 40 Minn. 433; *Murdock* v. *Anderson,* 57 N. C. 77; *Capps* v. *Holt,* 5 Jones' Eq. 155; *Carr* v. *Land Co.* 7 C. E. Green, 85.

A definite offer and acceptance and a meeting of minds is required to bind the parties sought to be charged in a bill to enforce performance of a contract to sell real estate. Fay on Specific Per. secs. 288, 289, 384.

Mr. JUSTICE DUNN delivered the opinion of the court:

It is claimed by appellees, and the superior court held, that the correspondence between Emmett Brooks and appellant did not so certainly and definitely describe the subject matter of the contract as to enable the court specifically to enforce it, for the reason that it is left uncertain whether five lots or seven were bargained for, and that extrinsic evidence is not admissible upon that question. It is true that a written contract must speak for itself as to the terms, conditions and limitations of the agreement, but as to the parties and subject matter of a contract extrinsic evidence is always competent, if necessary for their identification. "A deed or other written contract is not void for uncertainty in the description of the land sold or conveyed, if from the words employed the description can be made certain by extrinsic evidence of facts, physical conditions, measurements or monuments referred to in the deed." *Hayes* v. *O'Brien,* 149 Ill. 403.

"Any description adopted in a deed by which the premises intended to be conveyed may be established and identified is sufficient; and it is the settled doctrine, for the purpose of sustaining a grant extrinsic evidence may al-

ways be used to identify and establish the objects of the call in the deed. A devise or grant will only be declared void for uncertainty where, after resort to oral proof, it still remains a matter of mere conjecture what was intended by the instrument." *Colcord* v. *Alexander,* 67 Ill. 581.

Extrinsic evidence was therefore admissible in this case,—indeed necessary,—to identify the subject matter of the contract. It was mentioned in the first letter as "my undivided interest in the Chicago lots." These words indicate lots in Chicago in which the writer owned an undivided interest. The evidence introduced shows that the five lots mentioned in the amended bill answer this description and no other lots do. This letter appellant answered, "I concluded to accept your proposition," and inclosed the cash payment demanded. It is difficult to see what more was required to complete the contract. A plain proposition to sell the writer's interest in the premises mentioned in the amended bill for $1000,—$500 cash and balance in November following,—was unconditionally accepted and the cash payment made. It is true that the vendee in his letter referred to the lots with an added element of particularity. Whether his reference was an interrogation or an assertion, it corresponded with the fact, and the mailing of the letter completed the contract. The third letter did not affect the contract already made.

Even if the third letter is considered, it does not change the case. A false description has no effect in defeating a contract if the error can be shown and corrected by other matter in the instrument. (2 Parsons on Contracts, 550.) If the repugnancy of the parts is such as to render the intention of the parties unintelligible this defeats the contract, but if there is enough of the consistent and intelligible parts of the instrument to give effect to the intention of the parties the courts will regard such intention. Where there are two descriptions in an instrument, one of which describes the subject matter with reasonable certainty, and the other,

giving some additional particular, is incorrect, the incorrect particular or circumstance of description will be rejected as surplusage. (*Myers* v. *Ladd,* 26 Ill. 415; *Allen* v. *Bowen,* 105 id. 361; *Huffman* v. *Young,* 170 id. 290.) The court, by the parol evidence adduced, is enabled to place itself in the position of the parties. There is no conjecture as to what the parties intended. The subject matter of their negotiation was Emmett Brooks' undivided one-third interest in the Chicago lots, of which his sisters owned the other two-thirds. Whether the different tracts were divided into five or seven lots was an immaterial circumstance. The evidence shows that the same thing was in the minds of both parties,—the undivided interest in all this property, and nothing else,—and the agreement they made was binding on both, whether there were five lots or seven.

The description in a devise, "my house and lot in Patoka," is sufficient. (*Allen* v. *Bowen, supra.*) The description of the premises in a conveyance as "the following lots, tracts or parcels of land lying and being in the county of St. Clair and State of Illinois, being lots in" certain blocks, carries all the lots in the blocks. (*Bowman* v. *Wettig,* 39 Ill. 416.) This court, by the aid of competent evidence, found in the words, "the north half of the south-east quarter of section 27," a legal description of the east half of the south-east quarter of section 27. (*Felkel* v. *O'Brien,* 231 Ill. 329.) There is no difficulty, by the aid of competent evidence in this case, in finding the lots in Chicago in which Emmett Brooks owned an undivided interest. While no State, county, town, range, section, monument or measurement is referred to and the size of the lots is not given, it is definitely stated that they are the lots in Chicago which Emmett Brooks owned jointly with his two sisters, and the evidence shows that he never owned any interest in any lots in Chicago except those described in the bill. When the ownership of these lots is proved the identity of the subject matter of the contract is established.

It is said that the three letters show a patent ambiguity and that no extrinsic evidence can be received to disclose the real situation. The admissibility of parol proof does not depend in this case upon the distinction between patent and latent ambiguities. Such evidence does not contradict or vary the terms of the writing. It is received merely for the purpose of identifying the subject matter to which those terms apply, and is always admissible for such purpose. *Bulkley* v. *Devine,* 127 Ill. 406; *Marske* v. *Willard,* 169 id. 276.

It is insisted that the vendor was justified in repudiating his contract on account of the gross inadequacy of the consideration. It is true that specific performance is not a matter of absolute right, but this is no case for the application of that doctrine. Where there are circumstances of oppression, unfairness or advantage taken, a court of equity will not specifically enforce an unconscionable bargain. But the object of courts of equity, as well as courts of law, is the enforcement of contracts understandingly entered into, rather than their evasion. Ordinarily the specific performance of a contract to convey land is as much a matter of course as an action of damages for its breach. There is no charge or evidence of fraud in the case. The parties were competent to contract, and did fairly contract, with each other, and neither side ought to be relieved from the agreement on the ground that good business judgment was not used in entering into the contract.

In this case the vendor makes no complaint of the inadequacy of consideration, and can make none. After having sought the vendee unsolicited, made a contract upon his own terms and received half the purchase price, he repudiated the contract, not because of any unfairness or inadequacy of consideration, but at the request of a third party, to whom he at once conveyed the property for the same consideration for which he had sold it to the first vendee. He testifies that he has no interest in the property. No

circumstances are shown which make it inequitable that this contract, fairly made, should not be enforced, particularly when the relief would be denied to complainant, not for the benefit of the vendor, but in order to give the benefit of the alleged unconscionable bargain to a third person to whom the vendor has conveyed the property for the same inadequate consideration. A decree dismissing the bill would simply take from the complainant the benefit of his contract and give it to another who officiously interfered and induced the vendor to repudiate his agreement.

It is urged that there is a variance between the allegations of the bill and the proof, in that appellant's letter of March 2 differs from the exhibit attached to the bill. No objection was made to this letter when it was offered in evidence, and the objection of a variance cannot now be entertained. Had such objection been urged it could readily have been obviated by an amendment of the bill. The decree was on the merits, and it cannot be sustained in this court on the ground of a variance in the proofs which was not suggested in the court below. *Driver* v. *Ford,* 90 Ill. 595; *Grundeis* v. *Hartwell,* id. 324.

The vendor having repudiated the contract and put it out of his power to comply with its terms by his conveyance to a third party, no tender by complainant was necessary before filing his bill. *Lyman* v. *Gedney,* 114 Ill. 388; *Boston* v. *Nichols,* 47 id. 353.

The decree will be reversed and the cause remanded to the superior court of Cook county, with directions to enter a decree in conformity with the prayer of the bill.

*Reversed and remanded, with directions.*

Scott and Carter, JJ., dissenting.