WILL OF BOECK: BOECK, Appellant.

*March 24—April 16, 1915.*

*Wills: Construction: Extrinsic evidence: Devise of land not owned: Mistake in description: Giving effect to intention.*

1. The intention of the testator, so far as it can be discovered from his will, must be considered as expressed therein.

2. Judicial construction of a will begins only when uncertainty of meaning arises; but such uncertainty may arise as well by application of the words of a will to the subject with which it deals as from the words themselves.

3. While extrinsic evidence cannot be resorted to for the purpose of
changing or explaining a will, it may be for the purpose of show-
ing the circumstances characterizing its making; and, for the
purpose of determining the meaning in fact and intended to be
expressed therein, the will may be read in the light of such cir-
cumstances.

4. Where the intention of the testator is plain, the court may and
should go to the uttermost limits of construction authority to
discover it expressed in the language used to that end.

5. A testator, who for many years had owned the southeast quarter
of the northwest quarter and the southwest quarter of the north-
west quarter and no other lands in a certain section, after devis-
ing the southeast quarter of the northwest quarter to one son,
in terms devised the *northeast* quarter of the northwest quarter
in said section (which he had never owned) to another son,
charged with payment of a legacy to a daughter. The will did
not dispose in any way of the southwest quarter of the north-
west quarter, although all of testator's other property was by
specific mention distributed. It being manifest that the tes-
tator intended to devise to the second son the southwest quarter
of the northwest quarter, the will is construed so as to give effect
to that intention.

Appeal from a judgment of the circuit court for Waushara
county: Byron B. Park, Circuit Judge. *Reversed.*

William Boeck died testate October 13, 1912. He had
owned continuously, up to that time, for many years, south
half of northwest quarter of section 13, township 18, range 12
east, in Waushara county, Wisconsin, the east forty of which
was his homestead. He never owned any other land in said
quarter-section. The west forty which he owned is the sub-
ject of this action. He was sixty-nine years old at the date
of the will. He was survived by eight children. All were
named as beneficiaries. There was no residuary clause in the
will. All the property, by specific mention, was distributed
among the survivors except the forty acres involved in the
action. To *Herman August Boeck* he, in terms, gave the
northeast quarter of the northwest quarter of said section 13.
*Herman* was not otherwise remembered on anywhere near the
basis of his brothers. The will was duly admitted to probate

in Waushara county and, in due course, the estate was assigned. Thereby the southwest quarter of the northwest quarter of said section 13 was dealt with as having been intended for *Herman August Boeck*. The two daughters appealed to the circuit court, insisting that the forty not mentioned in the will was intestate property. The circuit court, in due course, so held and gave judgment accordingly and awarded the contestants $60 as attorney's fees to be paid out of the estate. Judgment was so entered.

*Herman August Boeck* appealed.

For the appellant the cause was submitted on the brief of *John J. Wood, Jr.*

*Gad Jones,* for the respondents.

MARSHALL, J. There are no two opinions as to what the testator intended. He purposed recognizing his son *Herman* by giving him the forty acres of land which was not otherwise disposed of by his will, and to burden it with a legacy of $150 in favor of his daughter Bertha. That he intended to deal with the land he did not own, and thereby, practically, disinherit both son and daughter, notwithstanding the careful remembrance of them and all other members of his family, would be too absurd to be seriously thought of. This was the view below; but,—influenced by the observation in the editor's note in 6 L. R. A. N. s. 977, to *Lomax v. Lomax*, 218 Ill. 629, 75 N. E. 1076, that,—"if the will containing the devise . . . contains a complete, accurate description of a tract of land not owned by the testator, and no language whatever pointing in any wise to an intention to devise another tract which he did own, the devise fails,—it cannot be made to apply to a different parcel by extrinsic evidence; but if, anywhere in a will, there can be discovered words connecting the devise . . . with a tract of land that belonged to the testator, or indicative of his intention by such devise to devise a tract of land owned by him, courts will seize upon such

words to make effectual the testator's intended devise," and, further influenced by expressions, found now and then in judicial writings and encyclopædic codifications of decisions, such as this, now cited to us by counsel for respondent: "Where the will is plain, simple, and unambiguous upon its face, no evidence of the surrounding circumstances can be admitted,"— the learned circuit judge supposed the judicial hands were so tied to the rock of precedent that they could not be so loosened as to do justice in the particular case.

This is a good illustration of the danger of taking, literally, mere expressions sometimes found in law writings, for a guide. That danger is progressive directly as the volume of such writings increases and, perhaps, want of clearness of expression and tendency to follow precedent instead of principle, increases.

In the literal sense, the second quotation above, taken from 14 Ency. of Ev. p. 504, is, at least, very misleading and likewise the first quotation. If either means that the language of a will which is plain in its words cannot be changed in that respect by characterizing circumstances, and the ambiguity solved by reading the instrument in the light of the entire situation with which the testator dealt, it is wrong. Such a rule would make of law, in many cases, an instrument for perpetrating wrongs instead of one for vindicating rights.

It is useless to try to harmonize the many expressions found in the books in respect to the subject under discussion. There are some well established principles which are of the highest dignity. So far as such expressions do not accord therewith, they are wrong. The dominant of all such principles is this: The intention of the testator, so far as it can be discovered from his will, must be considered as expressed therein. With that goes all the principles for judicial construction. The basic one of such principles is that judicial construction begins only when uncertainty of meaning arises. With that goes the explanatory principle that, uncertainty of meaning

may arise as well by application of the words of a will to the subject with which it deals as from the words of the will themselves; and the one that while extrinsic evidence cannot be resorted to for the purpose of changing or explaining a will, it may be for the purpose of showing the circumstances characterizing its making and, for the purpose of determining the meaning, in fact, and intended to be expressed therein, it may be read in the light of such circumstances. These principles for construction have been so often stated in the decisions of this court that they must be considered as an undoubted part of our unwritten law, regardless of expressions here or elsewhere which might be viewed as not in harmony therewith.

Our attention is called to *Sherwood v. Sherwood,* 45 Wis. 357, to support the idea that ambiguity in a will cannot be created by reading it in the light of circumstances established by extrinsic evidence, nor such ambiguity explained by reading it in the light of like circumstances, but the contrary is the fact. There the distinction is drawn between reformation and construction, the former not being permissible, as to a will, and the latter just as legitimate as in respect to any other written instrument. There, also, it was held that evidence of the intention of the testator, extrinsic to the will itself, is not admissible for the purpose of explaining, construing, or adding to the terms of a will; "but such intention must be spelled out from the words of the will itself, *read in the light of the circumstances surrounding the testator when he made it.* In cases where there are inconsistent provisions in the will, evidence of such circumstances is always admissible." That is in perfect harmony with what we have said.

In view of the foregoing, keeping in mind the fact that, where the intention of the testator is plain, the court may and should go to the uttermost limits of construction authority to discover it expressed in the language used to that end, there does not seem to be any difficulty in reading the will in question as devising forty acres of land to *Herman August Boeck.*

That much is literally expressed, and there is no difficulty in applying it to the particular forty, since that is the only one the testator had after devising one to his son Samson.

That manner of reading a will to carry out a testator's intention, is so grounded in principle that judicial authorities could only serve to illustrate it. So far as any may be found, seemingly, out of harmony with it, a close scrutiny will, in general, show that the seeming conflict does not exist or was not intended. Such is the fact we think in regard to the language used in *Lomax v. Lomax,* 218 Ill. 629, 75 N. E. 1076, which efficiently challenged the attention of the trial court unfavorably to the conclusion we have reached. That is very evident, since in each of the several cases decided before and after it, cited in the brief of counsel for appellant,—*Decker v. Decker,* 121 Ill. 341, 12 N. E. 750; *Whitcomb v. Rodman,* 156 Ill. 116, 40 N. E. 553; *Felkel v. O'Brien,* 231 Ill. 329, 83 N. E. 170; *Collins v. Capps,* 235 Ill. 560, 85 N. E. 934,— ambiguity was created and explained by applying the language used to the circumstances characterizing the making of the will, and it was construed by regarding words in place which were there by necessary implication.

It may be that cases have been disposed of here where, either in the decisions or discussions leading up thereto, it was not appreciated that in the field for judicial construction and the circumstances under which occasion may arise for such construction, rules are just as broad in respect to wills as other written instruments. The principles have been, perhaps, viewed more broadly and explained in greater detail in recent years than formerly. All that makes for judicial efficiency in execution of the purpose for which courts were created,—to prevent and redress wrongs.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to affirm the judgment of the county court.

KERWIN and BARNES, JJ., dissent.