ESTATE OF SOUTHEY: BAKER, Appellant, v. MARINE NA-
TIONAL EXCHANGE BANK OF MILWAUKEE, Executor,
Respondent.

*January 5—February 2, 1965.*

For the appellant there were briefs by *Lueck & Skupniewitz* of Beaver Dam, and oral argument by *A. W. Lueck.*

For the respondent there was a brief by *John & Meyer* of Milwaukee, and oral argument by *Walter A. John.*

GORDON, J. Miss Southey's will was executed in 1958, six years after Mrs. Baker had commenced working for her. Miss Southey died in October, 1962, at the age of seventy-seven. Mrs. Baker's age roughly corresponded with that of Miss Southey.

Miss Southey's will included a bequest to Mrs. Baker provided that at the time of the testatrix's death Mrs. Baker was serving as Miss Southey's housekeeper and also that the relationship of employer and employee existed between them. Our burden on this appeal is to determine the intention of Miss Southey in imposing the two said conditions and whether the conditions were fulfilled by the claimant.

The facts surrounding the relationship of the two ladies are not in dispute. Miss Southey maintained an apartment

wherein Mrs. Baker performed a variety of duties as housekeeper and companion for the years between 1952 and 1960. During that time, Mrs. Baker was paid a weekly salary by Miss Southey and actually lived in the apartment with her.

On January 31, 1960, Miss Southey sustained a serious stroke and was taken to Columbia Hospital. Her health was so seriously impaired by the stroke that guardians were appointed by the court in February, 1960. In March, 1960, Miss Southey was removed from Columbia Hospital to a nursing home, where she remained until her death approximately two and one-half years later. She did not regain a status of competence between February, 1960, and the date of her death.

Mrs. Baker left the apartment where she had lived and worked since 1952 when, in April, 1960, the guardians determined to give up such apartment and have Miss Southey's furniture stored. However, Mrs. Baker continued to serve Miss Southey as a personal attendant and was paid for such work by the guardians.

The record amply establishes that Mrs. Baker was devotedly attentive to Miss Southey during the two and one-half years of the latter's incapacity. Mrs. Baker spent six days a week in attendance to Miss Southey. Among the many duties which Mrs. Baker performed were the following: She read mail and the newspaper to Miss Southey; she fed her; she prepared foods which Miss Southey particularly enjoyed; she took Miss Southey's soiled clothes to her own apartment, washed them and returned them; she took Miss Southey for walks in a wheelchair.

The equities in favor of Mrs. Baker are strong. However, the respondent contends that a proper interpretation of the will must foreclose Mrs. Baker's qualification as a legatee. Under this reasoning, it is pointed out that Mrs. Baker could not be considered as Miss Southey's housekeeper at the time of her death because there was simply no house to

keep; the apartment had been closed almost two and one-half years earlier. In a similarly literal vein, it is arguable that Mrs. Baker was not an employee of Miss Southey at the time of Miss Southey's death because at such time Miss Southey had been under guardianship for several years; under this view, Mrs. Baker was an employee of the guardians and not of the testratrix.

"But the character of every act depends upon the circumstances in which it is done." HOLMES, J., in *Schenck v. United States* (1919), 249 U. S. 47, 52, 39 Sup. Ct. 247, 63 L. Ed. 470. Miss Southey's will was drawn in the light of the circumstances which existed in 1958. In our opinion, the language of the will requiring an employer-employee relationship and also requiring the performance of housekeeping duties on the part of Mrs. Baker must be interpreted in light of the situation which prevailed at the time when the will was executed.

Until Miss Southey's death, Mrs. Baker continued to serve her personally in the same basic manner in which she had served at the time that the will was signed. While technically hired by guardians, Mrs. Baker in effect worked for Miss Southey. Since the apartment had been vacated, Mrs. Baker did not qualify as a housekeeper in a strict sense, but she did care for Miss Southey's needs and wants in a most comprehensive way.

The court's goal is to ascertain the intention of the testatrix as set forth in her will. *Estate of Buser* (1959), 8 Wis. (2d) 40, 98 N. W. (2d) 425. In determining the meaning of the words used in a will, we have stated that the most important rule is the general intent of the testator. *Estate of Treat* (1948), 253 Wis. 527, 529, 34 N. W. (2d) 685.

If the conditions imposed in this will are to be literally interpreted in relation to the existing facts found at the time of death, then, in such event, the bequest to Mrs. Baker fails.

However, in the words of the court in *Will of Boeck* (1915), 160 Wis. 577, 581, 152 N. W. 155:

" '. . . intention must be spelled out from the words of the will itself, *read in the light of the circumstances surrounding the testator when he made it.'* "

This court stated in *Estate of Breese* (1959), 7 Wis. (2d) 422, 426, 96 N. W. (2d) 712:

"The construction of a will by a court is the ascertainment of that content or the meaning of the words, *i.e.,* the intention of the testator. To do this the court attempts to place itself in *the position of the testator when he made his will* and to consider the use of the words in relation to the surrounding circumstances." (Emphasis added.)

We conclude that the testatrix intended Mrs. Baker to qualify as a beneficiary if she continued to serve her in the same comprehensive fashion at the time of death as existed at the time the will was drawn. Under this standard, Mrs. Baker met the conditions imposed and is entitled to receive her share under the will.

*By the Court.*—Judgment reversed.

HALLOWS, J. (*dissenting*). I think the majority in its interpretation of the language of the will has applied the *cy pres* doctrine to a noncharitable bequest.