ESTATE OF GOTTHART: GOTTHART (Robert) and others, Appellants, v. GOTTHART (Gustave), Respondent.

*No. 155. Submitted November 2, 1972.—Decided December 7, 1972.*
(Also reported in 202 N. W. 2d 397.)

564

For the appellants the cause was submitted on the briefs of *J. Richard Sendik* and *Brendel, Flanagan & Sendik, S.C.,* all of Wauwatosa.

For the respondent the cause was submitted on the brief of *Burke & Schoetz* of Milwaukee.

HANLEY, J. The sole issue on this appeal is whether for purposes of his will, the testator "occupied" a "homestead" at the time of his death.

Appellants contend that because the testator had not lived in this house for approximately a year prior to

his death and because it had been rented and all of his personal belongings removed, the testator did not "occupy" a "homestead" at the time of his death within the obvious meaning of the will. We do not agree for several reasons.

There can be no doubt that at the time of his death, the testator did have a "homestead" in the property. In the case of *Herrick v. Graves* (1862), 16 Wis. 163 (*157), the court in construing the statutory requirements necessary to claim a homestead exemption stated:

"For the statute makes occupancy and possession by the owner an essential feature or characteristic of a homestead; and it would be a solecism to say that a man's homestead was in one place, when, in truth and fact, he resided elsewhere. From this it must not be assumed that a party would lose his homestead when he ceased to actually live upon it with his family. This, we think, is too narrow a construction of the statute. And hence we have held, in a case decided at this term, that a party would not forfeit the exemption on being absent from home a season, traveling with his family, *even though he should rent the premises to a tenant in the meantime, or should be prevented, by some temporary necessity,* from occupying his homestead for a time with his family. *In the matter of the application of Knox, administrator for license to sell real estate,* ante, p. 79." (Emphasis added.) 16 Wis. at page 172 (*166).

40 Am. Jur. 2d, *Homestead,* p. 247, states:

"Sec. 180. . . . In order to warrant a conclusion that the claimant's right of homestead has been lost, it must appear not only that the claimant relinquished possession, but also either that his removal was accompanied by an intention to discontinue his use of the premises as a home or that he formed such an intention after leaving the premises. . . ."

Appellants put great emphasis on the fact that because the testator had consented to the removal of his possessions, and the renting of his house, he had

intended to abandon his homestead. While such acts may themselves support a conclusion on the part of the children that in all probability their father would never return to his home, they fall short of evidencing an intent on the part of the testator to abandon the homestead where he had lived for the past eight years. Indeed, on various occasions, the testator expressed to several of his children how much he wanted to come home. The testator did not intend to abandon his homestead, anymore than he intended his illness or subsequent death.

As stated by this court on numerous occasions ". . . the intent of the testator is to be determined from the words of the will and the surrounding circumstances at the time of its execution." *Estate of Mangel* (1971), 51 Wis. 2d 55, 64, 186 N. W. 2d 276; *Estate of Boerner* (1970), 46 Wis. 2d 183, 174 N. W. 2d 457; *Will of Boeck* (1915), 160 Wis. 577, 152 N. W. 155. At the time the will was executed, the testator was occupying his house.

The word "occupy" as used in Paragraph II of the will of the deceased must be interpreted in the light of the situation which prevailed at the time when the will was executed. The testator did not physically occupy the homestead at the time of his death. His physical and mental condition prevented him from doing so. However, even though a tenant lived in the property, the testator had the right, had he been physically able to do so, to move back into the home by terminating the month-to-month tenancy.

In the case of *Estate of Southey* (1965), 26 Wis. 2d 335, 132 N. W. 2d 532, the testatrix made a specific bequest to her "housekeeper" if, at the time of her death, the parties still had the "relationship of employer and employee." When, in fact, Miss Southey did die, she was in a nursing home and had ceased to employ

the legatee herself, although her guardians had continued to employ her to care for and look after the testatrix. At page 338, the court stated:

"If the conditions imposed in this will are to be literally interpreted in relation to the existing facts found at the time of death, then, in such event, the bequest to Mrs. Baker fails."

The court, however, went on to state that when the will was read in light of the existing circumstances at the time of execution, the devisee had met the conditions imposed. Similarly, in the case of *Estate of Sneeberger* (1972), 54 Wis. 2d 657, 659, 196 N. W. 2d 662, the testator's will read:

" 'With the exception of my home which I hold in joint tenancy with my wife, all the rest, residue and remainder of my estate I give, devise and bequeath to my trustee hereinafter named, upon the trusts herein prescribed.' "

At the time of testator's death, however, the home was in his name alone and, therefore, the court below determined that it should pass to the heirs as intestate property. This court, however, giving the words of the will their clear and obvious meaning, reversed, ruling that it was the intent of the testator that property should nevertheless pass to his wife, under the terms of the trust.

If the conditions imposed in this will are to be literally interpreted in relation to the existing circumstances found at the time of death, then the devise to Gustave Gotthart would also fail. However, when the testator executed his will he was healthy and did actually "occupy" the homestead, and had he recovered from the aftermath of his stroke, he would have had the right to move back into his homestead.

We find no evidence of intent on the part of the testator to abandon the home at 440 West Montclair

Avenue as his homestead and, therefore, conclude that, within the meaning of his will, the property constituted his homestead which he occupied at the time of his death.

*By the Court.*—Judgment affirmed.