## HORACE BILLINGS

*v.*

## KANKAKEE COAL COMPANY.

1. TAX DEED—*ambiguity in description.* A sheriff's deed for land sold for taxes, described the land as in "T. 32 N. R. 9 E," without stating in what county, State, or east of what meridian it was situate. It was insisted that the deed was void for uncertainty, there being several meridians to which the description could equally apply, but the court held that the ambiguity, being a latent one, was susceptible of explanation by any facts or circumstances showing the land intended. There are no other tracts of land in this State to which the description in the deed is applicable, except these tracts in Will county. And the recital in the deed that the land was sold by the sheriff of Will county, under a judgment of the circuit court of that county for taxes, was held sufficient to show that the land intended was in Will county, Illinois.

2. LIMITATION—*under act of* 1839—*good faith.* Where a tax deed was made to James Hervey, and he paid all taxes on the land for over seven successive years, while the land was vacant and unoccupied, which was set up in defense by a party succeeding to his title, against a party claiming under the patent title, the latter contended that the color of title was not acquired in good faith. The facts were, that there were two persons of the name of James Hervey, one residing in Chicago and the other in Canada, the one residing in this State having made the purchase, and having died before the execution of the sheriff's deed to the other. It appeared that the purchaser turned over his interest to a firm of which

the other was a member, or with which he was connected, and that the deed was made to the latter with the consent of such firm, to be held in trust for them, and that the heirs of the purchaser acquiesced in such arrangement: *Held*, that the evidence of bad faith was not sufficient to avoid the effect of the tax deed as color of title *made in good faith*, the presumption being in favor of good faith until rebutted.

3. CONVEYANCE—*whether deed made to a dead person from the description of residence.* Where a party living in Cook county, Illinois, purchased land for taxes, and after his death the sheriff, executed a deed upon the certificate of purchase, to another person of the same name, residing in Canada, who paid all taxes on the land for seven successive years, it was contended that the deed was made to a person not in being. The deed was made out in the absence of the grantee: *Held*, that the recital in the deed of its having been made to the person of the same name in Cook county, was not conclusive as to the fact of the real grantee's residence, or as to which person the deed was made to.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Mr. F. GOODSPEED, and Mr. H. SNAPP, for the appellant.

Mr. G. D. A. PARKS, and Messrs. BARBER & MUNN, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action of ejectment, brought by the appellant, to recover the possession of certain tracts of land in Will county, in this State.

The plaintiff deduced title in himself from the United States.

In defense, the defendant set up a tax deed for the lands, executed by the sheriff of Will county to James Hervey, dated April 10th, 1848, based on a sale made on the 17th day of November, 1842, for the taxes of 1841—payment of all taxes on the lands, while they were vacant and unoccupied, by James Hervey, for seven successive years, from 1848 to 1854, both inclusive, and title derived from James Hervey through intermediate conveyances, possession having been taken by defendant's grantor in 1865.

The only ground of error which has been urged before us for the reversal of the judgment of the court below sustaining the defense, is, the insufficiency of the tax deed as color of title made in good faith.

It is first objected that the deed is void for uncertainty of description, it not showing in what *county, State,* or east of *what meridian* the lands lie.

The lands are 80 acre tracts in sections 18 and 19, described as being in T. 32 N., R. 9 E. It is said that, by reference to the government surveys, it will be found that there are more than one T. 32 N., R. 9 E, and, therefore, that the description in this deed will apply as well to several different parcels of land, as to any one parcel.

It was held in *Dougherty* v. *Purdy,* 18 Ill. 208, that an ambiguity of this sort is a latent ambiguity, which is susceptible of explanation by any facts or circumstances by which the mind is convinced as to which of the several tracts to which the description is applicable, was intended by the parties to the conveyance; and it was there held to be explained when it is shown which of the several tracts the grantor claimed, and the same in *Clark* v. *Powers,* 45 id. 283; and in *Atwater* v. *Schenck,* 9 Wis. 160, it was held, in a similar case, that it would be presumed, from the circumstance, that both parties to the contract resided in that State, that the land referred to was situated in that State, nothing appearing to the contrary. There are no other tracts of land in the State of Illinois to which the description contained in the deed is applicable, except these tracts in Will county.

The fact recited in the deed, that the lands had been sold by the sheriff of Will county under a judgment against them for the payment of taxes, in the circuit court of Will county, was of equal force with those in the cases cited, to show that the tracts of land intended to be conveyed were those situate in Will county. And the act creating Will county, and defining its boundaries, expressly includes T. 32 N., R. 9 E, within its territorial limits. Sess. L. 1836, p. 262.

It appears that there were two persons bearing the name of James Hervey, one of whom resided in Chicago, and the other in Canada. The one residing in Chicago bought the lands for the taxes in November, 1842; he died in the fall of 1846. The tax deed having been executed in 1848, and it reciting that the lands were purchased in November, 1842, by James Hervey, of Cook county, State of Illinois, and the deed, therefore, conveying the lands to the *said* James Hervey, it is insisted that the tax deed was issued to a dead man; that there was no grantee *in esse,* or if it were true that James Hervey of Canada took the sheriff's deed to himself, he knew that he was not entitled to it, and therefore can not use it as *color of title made in good faith.*

The theory of the defendant is, that the lands were bid in at tax sale by James Hervey, junior, of Chicago, for some purpose connected with some relation of business previously existing between the firm of Crawford & Hervey, and Duncan Bruce; that James Hervey, senior, of Canada, acted in the matter as the representative of the firm of Crawford and Hervey, by the selection or acquiescence of all the parties, and that the title was vested in, and was held by him, in trust for that concern.

There are facts in the case which tend to support this view. There is some vague proof that Duncan Bruce had had some dealings, at an early day, with the firm of Crawford & Hervey, of which both these James Herveys were members, and had borrowed money of them. The two James Herveys were cousins, and had been engaged together in Illinois for a period of above three years, in an extensive contract upon the canal, which was taken by Crawford and Hervey in 1838, and completed in 1841. James Hervey, Sr., occasionally came to Illinois, and during the progress of the work upon the canal, occasionally visited the line. It appears that Wm. B. Ogden was a land agent at Chicago, in 1844, engaged in the business of paying taxes; that he paid the taxes on these lands as agent for James Hervey in 1843, and Ogden and

Jones, or the successors of that firm, regularly, from that time forward to 1864, paid the taxes on some of the land, and on all of it with the exception of the years 1855 and 1857. At least once during that time, James Hervey, Sr., had been seen in the office of Ogden. The lands in question were spoken of by James Hervey, Jr., as "the Bruce lands." When he bought them at the tax sale, they were regarded as undesirable, and as of but little value; he appears to have bought no other lands at the tax sale, and the purchase of these lands was the only apparent object of his trip from Chicago to Joliet. The amount of the purchase was only five 80 acre tracts at $2.43 per tract, and all the tracts, as appears, belonging to Duncan Bruce. The certificates of purchase of the lands were not assigned. From a memorandum in pencil on their back, they seem to have been received at the office of the county commissioner's clerk in January, 1848, from the hands of Ogden, Jones & Co., with an order to make the deed to James Hervey.

There is no evidence that James Hervey, Jr., himself ever gave any attention to the lands, except a casual request to a witness, in 1843, to find a purchaser for the lands; that he wanted to get rid of them; that he considered them as of but little value, and did not want to pay taxes on them. In the will of James Hervey, Sr., dated March 7, 1857, he declares "that the lands unsold in Will county, in the State of Illinois, known by us as the Bruce lands, belong to the firm of Crawford and Hervey." We do not regard this declaration as competent evidence further than as bearing upon the question of good faith in James Hervey, Sr., and tending, with the other evidence, to denote that he was the person to whom the tax deed was in fact issued.

The first payment of taxes, March 11, 1843, would seem to have been made by James Hervey himself, as the tax receipt is in his name simply. All the subsequent payments of taxes appear to have been through the agency of Mr. Ogden, or the firm of which he was a member. Here

occurred a change in the mode of paying the taxes which would well consist with the passing over of the tax certificates to James Hervey, Sr., to hold the lands, as he, residing in Canada, would naturally employ a resident here to pay his taxes; whereas James Hervey, Jr., residing at Chicago, the same place with this firm of Ogden & Jones, might, for aught that appears, as well have paid his own taxes as to have employed this firm to pay them for him.

James Hervey, Sr., was a single man, and the other James a married man with children, and if the lands were held in trust, this suggests a reason of convenience for the former holding the title, instead of the latter.

These tax paying agents must have known for what person they paid the taxes, and to whom the lands belonged; and we should be slow to believe that they would have violated their trust, and lent themselves to the perpetration of a fraud upon the children of their principal, by sending forward the tax certificates and procuring the tax deed to be made to a person who did not own the lands, and was not entitled to receive the deed. The inference would be that they obtained the deed for the person for whom they had been paying the taxes. James Hervey, Jr., left children, who must all, if living, have been of age for several years when this suit was brought; and they, so far as appears, have never asserted any claim. This acquiescence affords an inference that the making of the tax deed to James Hervey, Sr., was satisfactory to all concerned.

It is true, that James Hervey, Sr., was the administrator of James Hervey, Jr., and in that capacity he might have got possession of these tax certificates.

The presumption is in favor of good faith until rebutted. *Bowman* v. *Wettig*, 39 Ill. 416.

The want of good faith here imputed is not toward the plaintiff or any one with whom he is in privity, but toward strangers to his title, who, so far as appears, have never complained.

Upon the whole case we do not regard the evidence of bad faith, which is here produced, as sufficient to avoid the effect of the tax deed in question, as color of title *made in good faith.*

We can not accede to the view that the deed was made to a dead person. We are satisfied, from the evidence, that the deed was made to and obtained by James Hervey, Sr., of Canada. The recital in the deed of its being made to James Hervey, of Cook county, State of Illinois, should not have the conclusive effect in this respect which is insisted upon by appellant. The deed appears to have been made out by the sheriff in the absence of the party in interest, and the place of residence was probably merely copied from the tax sale certificate, or inserted as the supposed place of the grantee's or purchaser's residence, and not with the view of fixing the identity of the grantee. If the deed was in reality issued to, and received by James Hervey, Sr., with the previous assent of James Hervey, Jr., it would constitute color of title in the former, no matter what the sheriff might insert as to the grantee's place of residence. The recital would not control the fact as to what person the deed was issued to.

Regarding the alleged objections to the sufficiency of the tax deed as color of title made in good faith as invalid, the judgment must be affirmed.

*Judgment affirmed.*