# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

## SOUTHERN GRAND DIVISION.

### JUNE TERM, 1878.

THOMAS EMMERT

*v.*

MICHAEL HAYS *et al.*

1. WILL—*right of married woman to devise real estate—separate property.* Since the passage of the Married Woman's act of 1861, a married woman, married before that act took effect, may devise, by will, real estate which she owned at the time of her marriage. Under the Rev. Stat. of 1845 she could devise her separate property, and the act of 1861 enlarged the meaning of the term "separate property," and made it embrace such property as a married woman owned at the time of her marriage, or such as she should acquire during coverture, in good faith, from any person other than her husband, and made the same subject to devise by her.

2. Where a woman, at the time of her marriage (in 1860), owned real estate by inheritance from her deceased father, in 1870, while the marriage still existed, in due form of law, by will, devised the same, and in 1871 obtained a decree of divorce for the misconduct of her husband, and the will was duly probated after her death, it was *held*, on bill by her heirs to set aside the will and probate, that the will was valid, and passed her estate to the devisee, her husband having lost all interest in the lands by the decree of divorce.

3. SAME—*regulated by statute.* The rules providing for the descent of property have their origin in municipal regulation, and so, too, the power to dispose

of property by will is conferred by statute, and may be curtailed or enlarged, from time to time, as the legislative department may deem wise and for the best interests of the people.

4. SAME—*description of land, one good and the other wrong.* Where lands devised are described in the correct township and range, but, by mistake, in a wrong section, but with this addition: "being what is known as the Hays farm," the misdescription as to the section will not hurt, as all the description except the latter may be rejected as surplusage, and it is sufficient of itself.

5. MARRIED WOMEN—*separate property created.* Since the passage of the act of 1861, property purchased by a married woman during coverture, or property inherited by her before or since that act became a law, has been recognized and treated by this court as her separate property.

6. LEASE—*good as against devisee of married woman.* Where a husband and wife executed a lease of the wife's lands for a term of ten years, and the wife devised the same, after which she obtained a divorce, and then died, it was *held*, that although her husband had lost all rights under the lease by the decree of divorce, it was binding upon the wife and those claiming title under her.

APPEAL from the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. THOMAS G. ALLEN, for the appellant.

Messrs. DILL & KUEFFNER, and Mr. JOHN G. IRWIN, for the appellees.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the Court:

The principal question presented by this record is, whether Rebecca Stallings, on the 7th day of December, 1870, had power, under the laws of the State, to dispose of real estate by will, and in order to get a clear understanding of the question, a brief reference to the facts is necessary.

It appears, from the record, that Rebecca Stallings was married to William Stallings on the 16th day of January, 1860; that at the time of her marriage she owned the real estate in controversy in fee; that she acquired the title by inheritance from her deceased father, George L. Hays, prior to the marriage; that on the 7th day of December, 1870, in

due form of law, she executed her last will and testament. At this time, however, she was the wife of William Stallings, but at the May term, A. D. 1871, of the circuit court of Madison county she obtained a divorce from her husband, on the ground of extreme and repeated cruelty towards her. It also appears, that on the 19th day of January, 1872, Rebecca Stallings departed this life, seized of the lands in question; that on the 24th day of February, 1872, her will was admitted to probate by the county court of Madison county. After the will was admitted to probate, the devisee under the will took possession of the lands as owner thereof, and this bill was filed by the legal heirs of the testatrix to set aside the will and probate thereof, as a cloud upon their title as heirs to the lands attempted to be devised.

The position assumed by the complainants in the bill is, that the lands in question were not the "separate estate" of the testatrix, as that term is known in law, and as the testatrix was, at the time of the execution of the will, under the disability of coverture, the instrument purporting to be a will was inoperative and void.

The first section of chapter 109, of the Rev. Stat. of 1845, entitled "Wills," which was in force when this will was executed, declares: "Every person aged twenty-one years, if a male, or eighteen years if a female, or upwards, and not married, being of sound mind and memory, shall have power to devise all the estate, right, title and interest in possession, reversion or remainder, which he or she hath, or at the time of his or her death shall have, of, in and to any lands, tenements, hereditaments, annuities or rents charged upon or issuing out of them; or goods and chattels, and personal estate of every description whatsoever, by will or testament. All persons of the age of seventeen years, and of sound mind and memory, married women excepted, shall have power to dispose of their personal estate by will or testament, and married women shall have power to dispose of their separate estate, both real and

personal, by will or testament, in the same manner as other persons."

This statute confers express power on a married woman to devise her separate estate.

The lands involved in this litigation were inherited by the testatrix from her father. She acquired the absolute title by descent. Her husband never had any interest in the lands except such as he acquired by the marriage, and that interest, whatever it was, became divested and destroyed by the decree of divorce obtained by the testatrix for the misconduct of the husband.

The important inquiry then is, whether these lands are to be regarded as the separate estate of the testratrix within the meaning of the section of the statute quoted *supra.*

In deciding this question, a subsequent statute, approved February 21, 1861, as we conceive, has an important bearing. It declares: "That all the property, both real and personal, belonging to any married woman as her sole and separate property, or which any woman hereafter married owns at the time of her marriage, or which any married woman, during coverture, acquires in good faith from any person other than her husband, by descent, devise or otherwise, together with all the rents, issues, increase and profits thereof, shall, notwithstanding her marriage, be and remain during coverture her sole and separate property, under her sole control, and be held, owned, possessed and enjoyed by her, the same as though she was sole and unmarried, and shall not be subject to the disposal, control or interference of her husband, and shall be exempt from execution or attachment for the debts of her husband."

At common law the wife was not permitted to take and enjoy real or personal property separate from or independent of her husband. 2 Story Eq. Jur. sec. 1373. But, notwithstanding the rule of the common law in this regard, where property, either real or personal, was given, devised or settled upon a woman, for her sole, separate or exclusive use, either

before or after marriage, courts of equity have uniformly protected the wife in the sole use and enjoyment of such property, free from the marital rights of the husband or the claims of his creditors. Where a separate estate has been created, whether the husband shall be barred of the interest which the common law gave him in the property of the wife, depended upon the intention of the donor in creating the separate estate; but as has been said in Clancy's Rights of Married Woman, 251, when that intention is once ascertained to be, that the use is for the wife alone, and not for her husband, equity will give effect to it, without any regard to the legal maxim that "the husband is the head of the wife, and therefore all that she has belongs to him." The separate estate could be created by deed, devise or marriage articles, and when created its character and use and object were marked out and defined by the instrument by which it was established. The intervention of trustees was not regarded as indispensable. Story, sec. 1380.

A separate estate created as here indicated, it is contended by the complainants in the bill, is the only separate estate which a married woman can dispose of by will, under the statute of 1845. Whether that position could be maintained had the act of 1861 never been passed, it is not necessary to determine. The rules providing for and regulating the descent of property have their origin in municipal regulation. So, too, the power to dispose of property by will is conferred by statute in the several States. That power may be curtailed or enlarged, from time to time, as the wisdom of the legislative department of the government may think wise and for the best interests of the people.

Under the act of 1845, a married woman had the power conferred upon her of disposing, by will, of her separate estate. If, at the time of the passage of that act, a separate estate was confined to such property as had been conveyed to trustees for a definite purpose, or such an estate as was created in a particular manner, and protected and sustained by courts of

equity until such time as the legislature should, by proper
enactment, enlarge the meaning of the term " separate estate,"
a married woman would be powerless to devise any property
by her owned which would not fall within the known
and recognized definition of " separate estates." But should
the legislature, at any time, so enlarge the meaning of
the term " separate estate," as that it would embrace lands
conveyed directly to a married woman, or such as should come
to her by title of fee simple by the statute of descents, or such as
she should, during coverture, purchase, no reason is perceived
why such property could not then be devised by her with the
same validity as the other property which was technically
known as her separate estate. Now, as we understand the act
of 1861, it enlarged the meaning of the term separate estate,
and made it embrace such property as a married woman owned
at the time of marriage, or such as she should acquire during
coverture, in good faith, from any person other than her
husband, by devise, descent or otherwise. In other words, a
legal separate estate was created, which could be devised by a
married woman in the same manner and with like effect as an
equitable separate estate. It was not the purpose of the act
of 1861 to curtail or circumscribe the powers and rights of married
women, but to enlarge them, and we apprehend that if the legis-
lature had entertained a doubt in regard to the power of a
married woman to devise lands, under the act of 1845, which
she had inherited or acquired by purchase, a provision would
have been inserted in the act directly conferring the power.
Since the passage of the act of 1861, property purchased by a
married woman during coverture, or property inherited by her
before or since the act became a law, when spoken of by the
court, has been regarded and recognized as her separate estate.

In *Bressler* v. *Kent*, 61 Ill. 428, the court, in speaking of prop-
erty held by a married woman, under the act of 1861, referred
to it as "a married woman's separate estate." In *Parent* v.
*Callerand*, 64 Ill. 98, such property was referred to as her " sep-
arate estate." The same expression will also be found in

*Martin* v. *Robson*, 65 Ill. 139. These expressions would seem
to indicate, that since the passage of the act of 1861, the term
"separate estate" has been by the court regarded sufficiently
comprehensive to embrace the lands held by the testatrix; but,
independent of this consideration, we are of opinion that Re-
becca Stallings had the power, under the statute, to devise
the lands in question.

We have been referred, in the argument, to *Bressler* v. *Kent*,
*supra,* as an authority bearing upon the question here involved,
but upon an examination of that authority it will be found not to
be in point here. The only question then before the court, and
decided, was, that a married woman could not execute a deed
of trust on her separate property, which would be binding on
her, unless her husband joined in the execution of the instru-
ment.

It is also insisted that while the testatrix may have had the
power to devise her lands by will, yet the will in question did
not pass the title to all the lands of the testatrix in consequence
of a misdescription of a part thereof. It is conceded that the
lands all lie in township 3 north, range 9 west of 3d principal
meridian, but a portion of the lands are located on a section
different from that described in the will. The land devised is
described in the will as follows:

"I give, devise and bequeath my estate and property, real,
as follows, that is to say, one hundred and ninety-five acres of
land in township 3 north, range 9 west of the third principal
meridian, described as follows, being 145 acres of the north
part of the north-west quarter of section 9, and the north-east
quarter of the north-east quarter of section 8, township 3, range
9, being what is known as the Hays farm, to my second cousin,
Theodore Emmert, son of William Emmert, and my cousin,
Mariah Schneider, his wife."

Suppose the description of the property devised had been as
follows: 195 acres of land in township 3 north, range 9 west
of the third principal meridian, being what is known as the
Hays farm,—we apprehend it will not be disputed that a deed,

2—89 ILL.

mortgage or will containing a description of this character might be sustained in any court. We may, therefore, reject as surplusage all of the description except the above, and then we have a perfect description of the property devised. The law on this subject is as stated in *Myers* v. *Ladd*, 26 Ill. 415, in this language: " The rule is, that where there are two descriptions in a deed, the one as it were superadded to the other, and one description being complete and sufficient of itself, and the other, which is subordinate and superadded, is incorrect, the incorrect description or feature · or circumstance of the description is rejected. as surplusage, and the complete and correct description is allowed to stand." See, also, *Swift* v. *Lee*, 65 Ill. 336. The view here taken does not conflict with *Kurtz* v. *Hibner*, 55 Ill. 514. In that case there was but one description, and parol evidence was offered for the purpose of proving a mistake, which was held inadmissible, while here are two descriptions, one of which may be rejected, leaving the other and true one in full force and effect.

The record presents another question, which remains to be considered. One Atkins was made a defendant to the bill and required to answer. In his answer he set up that on the 2d day of August, 1870, William and Rebecca Stallings, while they were husband and wife, leased the premises described in the bill to Allen Stallings, for the term of ten years, from March, 1, 1871, who took possession under the lease, and was subsequently evicted and turned out of possession by Theodore Emmert and others, who claimed under the will; that after eviction, and after the death of Rebecca Stallings, on the 18th day of March, 1872, he became the owner of the interest of William Stallings in the land by purchase, and also, by sale on execution, he became the owner of Allen Stallings' interest in the premises. The court sustained exceptions to the answer, and decreed that the lease was void. This ruling is assigned as error by Atkins.

Whatever interest William Stallings had in the premises, terminated when his wife obtained a divorce from him. Aus-

tin could not, therefore, derive any valid claim from, through or under William Stallings. If, however, William Stallings and Rebecca, his wife, leased the premises by a valid lease, we perceive no reason why such lease would not be binding on Rebecca Stallings and those claiming under her as devisees. They certainly had the power to enter into a valid contract of leasing, and if such was done, although William Stallings has lost all rights under the lease, still it might be binding upon Rebecca and those claiming under her.

We are therefore of opinion the court erred in sustaining exceptions to the answer of Austin, and for this error the decree will be reversed, and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*