CHARLES MORRALL, Appellee, *vs.* BERNARD MORRALL,
Appellant.

*Opinion filed December 15, 1908.*

WILLS—*when parol testimony is competent to prove legal de-
scription of devise.* Where a devise of "the homestead" is followed
by a description which is incomplete but not incorrect, parol tes-
timony is competent to prove the legal description of the home-
stead premises.

APPEAL from the Circuit Court of Grundy county; the
Hon. S. C. STOUGH, Judge, presiding.

This is an appeal from a decree of the circuit court in
favor of complainant, who is appellee here. Said decree
found that appellee was the owner of the premises described
in the bill and that he derived title thereto by virtue of the
will of his deceased father, James T. Morrall. Said James
T. Morrall was in his lifetime the owner of certain real
estate in the city of Morris, Grundy county, Illinois. He

died on the 10th day of April, 1889, leaving surviving him
a widow, Sarah Ann Morrall, and Charles Morrall, Bernard
Morrall, James Morrall, Edward Morrall and Josephine
Beasley, his children and only heirs-at-law. Said James T.
Morrall made a' last will and testament, the second clause
of which reads as follows:

"*Second*—After the payment of such funeral expenses
and debts, I give, devise and bequeath to my wife Sarah
Ann Morrall all my property both Real and Personal Dur-
ing her lifetime and at her death if my son Charles Morrall
is alive and takes care of her in her sickness and berries
her hee is to have the homstead that is part lot (16) Ros-
mans sub Devision of No. (95.32-100 acres in the city of
Morris allso the strip on the north line (7) ft. wide and
(130) ft. long in same block but if Charles should not live
whoever of my children does take care of and burrey my
wife is to have this property and I give to my son Edward
ten dollars $10 and the Balance to bee divided equal between
my auther three children James Bernard and Sasephean
Beasley after paying all funeral expenses and auther bills
contracted during my wifs sickness. I give to Bernard
Morrall my photograph and fram."

This is the only provision of the will involved in this
case. Mrs. Morrall, the widow, died at the home of Ber-
nard Morrall January 7, 1903. She had resided with ap-
pellee, Charles Morrall, from the date of her husband's
death until about the middle of April, 1902, when she was
taken to the home of her daughter, Mrs. Beasley, and re-
mained there about two months, and was then removed to
the home of appellant, Bernard Morrall, where she remained
until she died, in January following. Bernard Morrall af-
terwards set up a claim to the homestead premises upon the
ground that he was entitled to them under the terms of the
will, having taken care of and buried his mother. Appel-
lee, Charles Morrall, thereupon filed the bill in this case, in
which he alleged that he had complied with the provisions

236—41

of the will of his father by taking care of the widow during her lifetime and paying the burial expenses after her death. The bill alleged that the widow made her home with appellee for more than twelve years after her husband's death and until appellee moved to Chicago, in May, 1902; that the widow refused to go to Chicago to live with appellee although he requested her so to do, and that for about six months prior to her death she resided with appellant, Bernard Morrall; that appellee offered to pay appellant board for said widow and for his trouble in caring for her, but that said Bernard refused to accept it and claimed he was entitled to the real estate in controversy for caring for his mother during said six months. The bill prayed that the complainant be decreed to be the owner of the homestead premises and that the defendant be ordered by decree of the court to make conveyance thereof to him; that an account be stated between complainant and Bernard Morrall for the amount due the latter for taking care of his mother during the last six months of her illness.

The answer of Bernard Morrall denies that complainant took care of the widow from April 10, 1889, to the date of her death, and denies that he is entitled to the homestead premises or any part thereof; denies that the widow refused to go to Chicago in 1902 with complainant, and avers that he abandoned his mother about the first of May and refused longer to support and provide for her, whereby he forfeited all his right, title and claim to the homestead premises under the will. The answer further avers that the complainant, Charles Morrall, made a verbal agreement with defendant, Bernard Morrall, by which the latter was to support and provide for their mother during her lifetime and bury her after her death, in consideration for which Bernard was to have the homestead in fee simple; that in pursuance of said agreement Charles turned over to Bernard possession of the said premises and title papers thereto, including the will of their father, and that said Bernard thereafter supported the

widow during her lifetime and paid the costs and expenses of her last illness and of her burial; that said Bernard had made lasting and valuable improvements upon said premises after taking possession in pursuance of said agreement, had paid the taxes thereon and was the lawful owner of said premises. Bernard Morrall has prosecuted this appeal from the decree of the circuit court granting the relief prayed in the bill.

J. W. RAUSCH, for appellant.

E. L. CLOVER, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

The only provision of the will involved in the controversy is the second clause thereof, which is set out in the statement preceding. The premises in controversy were described in the will as "the homestead that is part lot (16) Rosmans sub Devision of No. (95.32-100 acres in the city of Morris allso the strip on the north line (7) ft. wide and (130) ft. long in same block." The court found by the decree that the correct description of the homestead premises was: "All that portion of lot sixteen (16) of Roseman's subdivision of 95.37 acres of the north-east quarter of section four (4), in township thirty-three (33), north of range seven (7), east of the third principal meridian, commencing at a point thirty-three (33) feet west of the south-east corner of said lot, and running from thence west one hundred and thirty (130) feet, thence north sixty (60) feet, thence east one hundred and thirty (130) feet, and thence south sixty (60) feet to the place of beginning; and also commencing at the north-east corner of lot No. sixteen (16), in the subdivision of original lot No. sixteen (16), of Roseman's subdivision of ninety-five (95) and thirty-two (32) one hundredths (95.32) acres; thence running north seven (7) feet and eight (8) inches, thence west one hundred and thirty (130) feet, thence south seven (7)

feet and eight (8) inches, then east one hundred and thirty (130) feet to the place of beginning, all situated in the city of Morris, Grundy county and State of Illinois, which said above described real estate was the homestead of the said James T. Morrall at the time of his death and had been for many years prior thereto."

It is first contended that the court had no power to find and decree the description of the homestead premises; that this amounted to a reformation of the will, and that courts have no power to reform such instruments. The proof shows that James T. Morrall owned two pieces of property in the city of Morris,—one on the east side and one on the west side of Division street, in said city,—and that his homestead was the property on the west side of said street; that his widow and appellee, Charles Morrall, continued to reside on said property until Charles went to Chicago, in 1902. The homestead property at the time of testator's death was worth about $500. At the time of testator's death his wife and his son Charles were the only members of his family living with him upon the homestead. The answer of appellant admits that the "said homestead, as described in the said will, is part of lot 16 of Roseman's subdivision of No. 95.32 acres in the city of Morris; also the strip on the north line seven feet wide and one hundred and thirty feet long, in the same block." The description following the word "homstead," is not a misdescription but an imperfect one. The homestead was a part of lot 16 of Roseman's subdivision of 95.32 acres. If the property had been simply designated as the homestead of the testator it would have been sufficient, and parol testimony in such case is competent to prove the legal description of the homestead premises. This is allowable in order that effect may be given to the intention of the testator as expressed in his will, and is clearly not in violation of the rule that extrinsic circumstances cannot be resorted to for the purpose of injecting into the will an intention not therein expressed by

the testator.  In *Emmert* v. *Hays,* 89 Ill. 11, the devise was
of "my estate and property," 195 acres in township 3, north,
range 9, west of the third principal meridian, "being 145
acres of the north part of the north-west quarter of section
9, and the north-east quarter of the north-east quarter of
section 8, township 3, range 9, being what is known as the
Hays farm."  The lands were located in the town and range
mentioned but some of them were in sections different from
those mentioned in the will.  The court held that if the
land had been described as 195 acres in township 3, north,
range 9, west of the third principal meridian, "being what
is known as the Hays farm," it would have been sufficient,
and that if the rest of the description in the will were re-
jected as surplusage it would leave a perfect description of
the property devised.  Other decisions to the same effect
are cited in the opinion in that case and in *Decker* v. *Decker,*
121 Ill. 341, and so far as we are advised the same rule has
been adopted by all the courts of this country.

It is further contended by appellant that appellee did not
care for his mother as required by his father's will; that
in June, 1902, he agreed with appellant, Bernard Morrall,
if he would keep and care for the mother he (Bernard)
should have the homestead, and that in pursuance of that
agreement Bernard thereafter cared for her until her death,
about six months later, and paid the doctor bills and funeral
expenses.  About a year and a half after her husband's
death Mrs. Morrall suffered a paralytic stroke, which left
one side paralyzed during the remainder of her life.  Her
condition was such that she required a great deal of care and
attention.  Appellee was a single man when his father died
and so remained until May, 1899,—a period of ten years,—
when he was married.  He and his mother lived together in
the homestead until the mother went to Beasley's, in 1902.
They were dependent on the labor of Charles for their sup-
port.  He worked at different times on the railroad, in a
tile yard and in a tannery.  His wages were from $1.10

to $1.50 per day. Out of these earnings he supported the household. When able to procure a servant girl at wages he could afford to pay he did so, but much of the time he was unable to secure help. In addition to doing the house-work when he could not get help, he at all times gave his mother the best care he was able to and performed his daily task of labor. The proof shows his conduct toward and care for his mother to have been most exemplary. In April, 1902, he asked Beasley, his sister's husband, to take his' mother to his house and care for her awhile and agreed to give him two dollars per week therefor. Appellee testified that at that time he did not know he was going to Chicago, but that afterwards he received an offer of steady employ-ment at two dollars per day and decided to accept it. He moved there May 25, 1902. He testified that two weeks after moving to Chicago he returned and went to Beasley's to see his mother and asked her if she would go to Chicago to live with him when he procured a house to live in; that she said she would if they would take her there in a buggy, and that he told his mother he would come and get her just as quick as he could get a house. Appellee testified that when he heard his mother had been taken to Bernard's he went to see him and inquired why that had been done, and that Bernard told him it was none of his business; that he talked with his mother and she said she did not want to go to Bernard's, but they told her he (Charles) had given her up and she would have to go to Bernard's. The proof is uncontradicted that Mrs. Morrall objected to being taken to Bernard's. She appears to have been satisfied to stay at Beasley's, but Mr. Beasley was unwilling to keep her longer for two dollars per week. Bernard Morrall testified that while their mother was at Beasley's Charles came to Morris from Chicago and said he could not take care of his mother any more; that his wife objected; that he said if he (Ber-nard) would take her and care for her he could have the homestead place, and that in pursuance of that agreement

he took his mother to his house in June, 1902, and kept her until her death, in January following, and paid doctor bills and funeral expenses, amounting to $65.50. Charles denied there was ever any such agreement made, and while no one else testified to knowing anything about any such agreement, other facts and circumstances proven, to say the least, tended as strongly to corroborate Charles as they did Bernard. The evidence upon this question justified the conclusion that the alleged agreement had not been proven. Nor can we say the finding of the chancellor that Charles was ready and willing and offered to take his mother to his home in Chicago and care for her, and that it was not his abandonment of her or refusal to take care of her that caused her to remain at Bernard's, was clearly contrary to the weight of the evidence. It is not a matter of surprise that after Charles had cared for his mother more than twelve years in her helpless condition, remaining so constantly with her during all that time when he was not at work, that, as said by one witness, he never attended a dance, ball game or other place of amusement, the court held the evidence insufficient to prove that he then abandoned and refused to care for her. The court found that Bernard had paid doctor bills and funeral expenses amounting to $64, and that he was entitled to $100 compensation for care and attendance upon Mrs. Morrall from June 13, 1902, to January 7, 1903, and ordered Charles to pay these sums. Previous to beginning the suit Charles had offered Bernard a larger sum but he refused to accept it. We see no reason he has for complaining of the decree, and we can not say that under the evidence the court was not justified in finding that Charles had substantially complied with the terms of the will and was therefore entitled to the premises.

The decree is therefore affirmed.

*Decree affirmed.*