ELIZABETH GRAVES *et al.* Plaintiffs in Error, *vs.* JAMES
ROSE *et al.* Defendants in Error.

*Opinion filed June 29, 1910—Rehearing denied October 12, 1910.*

1. WILLS—*extrinsic evidence not admissible to alter, detract
from or add to will.* Under the Illinois statute requiring wills to
be in writing and properly witnessed, extrinsic evidence is not ad-
missible to alter, detract from or add to the terms of a will, and a
will cannot be reformed to conform to any intention of the testator
not expressed in the will itself, however clear that intention may
appear from proof of extrinsic facts.

2. SAME—*parol evidence is admissible to explain a latent am-
biguity.* Where a will appears upon its face to be clear and un-
ambiguous, but it appears from extrinsic evidence or from matters
of which the court will take judicial notice that the apparently
clear and unambiguous terms have an uncertain meaning, the un-
certainty so created may be removed by extrinsic evidence.

3. SAME—*township, range, county and State may be supplied
by extrinsic evidence.* Where the description of land devised in a
will is apparently unambiguous but the township, county, range
and State are not specified, the court will take judicial notice, from
its knowledge of government surveys, that the apparently unam-
biguous description is, in fact, uncertain, and may permit the town-
ship, county, range and State to be supplied by extrinsic evidence.

4. SAME—*evidence that testator does not own lands devised
does not show latent ambiguity.* Evidence that the testator does
not own the lands devised does not tend to show a latent ambi-
guity but merely tends to show a mistake of the testator in mak-
ing the will, and a mistake is not a latent ambiguity such as may
be corrected by extrinsic evidence.

5. SAME—*rule where the description is partly true and partly
false.* Where the description of land devised is true in part but
not in every particular, it is not a violation of the rule against
reforming wills or correcting mistakes to reject the portion which
is shown to be false; but other words cannot be inserted to take
the place of those rejected, and unless enough of the description
remains after rejecting the false words to identify the subject of
the devise according to the facts existing when the will was made,
the devise cannot be sustained.

6. SAME—*what amounts to reforming will and correcting mis-
take.* If, after striking out words in the description of land which
are shown to be false, the remaining description can only be made
to apply to lands owned by the testator by adding other words, the

devise cannot be sustained, as such course amounts merely to re-forming the will and correcting mistakes.

7. SAME—*when a decree changing description of devise is erroneous.* A decree changing a devise of the "west ½ of the N. W. ¼ of section 12" and the "east ½ of the N. W. ¼ of section 12," and the "east half of the *north*-west ¼ of section 9," by striking out the italicized letters and word and inserting in lieu of the italicized letters the letters ".N. E." and in lieu of the italicized word the word "south," in order to make the devise apply to lands owned by the testator, is erroneous, as amounting to reformation of the will.

DUNN, CARTER and COOKE, JJ., dissenting.

WRIT OF ERROR to the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

F. M. FAHEY, for plaintiffs in error.

BARR, BARR & BARR, for defendants in error James P. Rose, Charles Rose and Mary J. MacKender.

C. W. BROWN, for defendant in error Harriet S. Kreigh.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Plaintiffs in error, Elizabeth Graves and William H. Rose, with Harriet S. Kreigh, three of the heirs-at-law of Joseph Rose, deceased, filed their bill in the circuit court of Will county for partition of the east half of the south-west quarter of section 9 and the north-east quarter of section 12, in township 33, north, range 11, east of the third principal meridian, in said county, against the defendants in error, James Rose, Charles Rose, Mary J. MacKender and Robert Henry Rose, (who was called Robert Rose Holmes,) the other heirs-at-law of said Joseph Rose, deceased, alleging that said Joseph Rose died intestate as to said lands and that the same had descended to his heirs-at-law. The administrator with the will annexed was also made a defendant to the bill. The defendants James Rose, Charles Rose and Mary J. MacKender by their answers ad-

mitted that said Joseph Rose was the owner of the lands
sought to be partitioned at the time of his death, but al-
leged that he intended to devise the same to them by his
last will and testament but in said last will and testament
misdescribed the same; that the said will contained the fol-
lowing devises: "I give, devise and bequeath to my son
Charles Rose all of west ½ of N. W. ¼ of section 12, and
to my daughter Mary J. MacKender east ½ of N. W. ¼
of section 12, and to my son James Rose all of the east
half of the north-west ¼ of section nine (9);" that the
testator did not own the lands described in the will and
intended to devise the lands which he actually owned; that
the letter "W" in "N. W. ¼" in the devises to Charles
Rose and Mary J. MacKender was used by mistake instead
of the letter "E," and the word "north" in the descrip-
tion "north-west ¼" in the devise to James Rose was used
by mistake instead of the word "south." The answers al-
leged that the defendants were severally in possession of the
tracts of land intended to be devised to them, respectively,
under promises of the testator to convey the same to them,
and each defendant prayed for a specific performance of
the promise alleged by the said defendant. They also filed
cross-bills alleging the same facts and praying for specific
performance of the alleged promises. The chancellor sus-
tained exceptions to the prayers of the answers for relief
and sustained demurrers to the cross-bills but granted leave
to amend the cross-bills. The defendants did not avail
themselves of the leave so given and no amendment was
made. The cause was heard upon the original bill, answers
and replications, and evidence, oral and documentary, heard
by the chancellor, and it was proved that the testator did
not own the lands described in the will but did own the
lands sought to be partitioned. A decree was entered find-
ing that both of the letters "N" and "W" contained in the
devises to Charles Rose and Mary J. MacKender should be
stricken out as surplusage, and that the word "north-west"

contained in the devise to James Rose should also be stricken out, and that said letters and words were incorrect and false. It was ordered, adjudged and decreed that the will devised in fee simple to Charles Rose the west half of the north-east quarter of section 12, township 33, north, range 11, east of the third principal meridian; to Mary J. MacKender the east half of the north-east quarter of said section 12, and to James Rose the east half of the south-west quarter of section 9, in said township 33, in Will county, and partition of the premises was denied. The record has been brought into this court as a return to a writ of error.

Our statute requires all last wills and testaments to be in writing and properly witnessed, and extrinsic evidence is never admissible to alter, detract from or add to the terms of a will. While the object of construction is to ascertain the intention of the testator, it must be an intention expressed in the will and it must be determined from the language used. A will cannot be reformed to conform to any intention of the testator not expressed in it, no matter how clearly a different intention may be proved by evidence of extrinsic facts. If that were not so, all wills would be subject to proof of mistake and of a different intention from that expressed, so that, in fact, property would pass without a will in writing which the law declares shall not pass except by a written will. In *Starkweather* v. *American Bible Society, 72* Ill. 50, it was said: "The courts are so strict that they will not permit the terms of a will to be altered even when the devisor has by mistake misdescribed land in a devise, by substituting that which could be clearly proved to have been intended;" and in *Bishop* v. *Morgan,* 82 Ill. 351, it was held that a mistake in description could not be corrected by extrinsic evidence, and that reference to the number of acres could not control the plain words of a will. The rule has been clearly stated in numerous decisions. *Kurtz* v. *Hibner,* 55 Ill. 514;

*Bingel* v. *Volz*, 142 id. 214; *Williams* v. *Williams*, 189 id. 500; *Vestal* v. *Garrett*, 197 id. 398.

The testator described the lands devised as certain parts of sections 9 and 12, without township, county, range or State, and the chancellor permitted these matters of description to be supplied by extrinsic evidence. There was no error in this, for the reason that parol evidence is admissible in explanation of a latent ambiguity, which is an ambiguity that arises where the writing upon its face appears clear and unambiguous but the meaning is rendered uncertain by extrinsic evidence, and where the uncertainty is created by such evidence it may be removed in like manner. This is not regarded as a violation of the rule that a writing shall not be contradicted or explained by oral evidence. A common instance of a latent ambiguity is such as appears in this case, where there are descriptions which are not ambiguous but which may be applied to two different subjects. Illustrations have been given of a devise of the testator's manor of Dale and at his death it is found that he has two manors of that name,—South Dale and North Dale,—and upon proof of that fact it may be shown which one is intended; or where a deed purports to convey Black acre and it is shown that there are two tracts of land bearing that name. (3 Phillips on Evidence, 750.) A latent ambiguity raised in that way can be explained by any evidence which shows the actual subject of the devise or conveyance. That principle was stated in *Dougherty* v. *Purdy*, 18 Ill. 206, where there was a conveyance of an undivided half of the north-west quarter of section 1, in township 1, north, in range 1, west, in the State of Illinois, and the deed did not show whether the land was east or west of the fourth or any other meridian. The court, by merely looking at the deed, could not say that it did not describe the premises accurately, but by looking outside of the deed, at the acts of Congress and the public surveys, it was found that there were meridians

in such surveys and more than one lot of land to which the description would apply. It was decided that the latent ambiguity raised by such knowledge could be explained by evidence. One familiar with government surveys might naturally say that a description of land without township, county, range or State would be void as describing nothing, but as a rule of law it is immaterial whether the extrinsic facts are such as must be proved by testimony or are so generally known that the court will take judicial notice of them, which is only a question of the method of ascertaining the facts. The same doctrine was applied in *Clark* v. *Powers,* 45 Ill. 283, where a deed described a tract as the east half of the south-east quarter of section 14, in Liberty township, 1, west of the fourth principal meridian, in the county of Mercer. There was no township called Liberty in Mercer county, and there were three sections No. 14 in range 1, west. The ambiguity was shown by the evidence of these facts, and it was held susceptible of explanation by showing which one of the several pieces the grantor claimed. In *Billings* v. *Kankakee Coal Co.* 67 Ill. 489, a tax deed did not show in what county, State, or east of what meridian the lands lay. It was held that the deed was not void for uncertainty, there being several meridians to which the description could equally apply, and that the ambiguity, being latent, could be explained by evidence of facts and circumstances. In *Halliday* v. *Hess,* 147 Ill. 588, a deed described land as being in section 8 but did not give any township. There were several sections numbered 8 in the county to which the description might apply, and it was considered proper to explain the latent ambiguity by parol. Here, it was proved that Joseph Rose, the testator, owned lands in sections 9 and 12, in township 33, north, range 11, east of the third principal meridian, in Will county, which was a proper explanation of the ambiguity concerning the location of those sections. The rule by which a latent ambiguity raised by extrinsic

evidence may be removed by the same kind of evidence
has no application, in principle or by authority, to a de-
scription which is free from ambiguity, and can only apply
to one certain and definite thing, and therefore it does not
apply to the definite and certain descriptions contained in
the will in this case.    There is neither doubt, uncertainty,
insufficiency nor ambiguity in the descriptions of the sub-
divisions of sections 12 and 9 of the will, and neither of
them could be applied to more than one subject of a devise. ·

There is another condition which has frequently arisen
in the construction of wills where the description of the
property intended to be devised is true in part but not true
in every particular, and it is not a violation of the rule
that a will cannot be reformed or a mistake in description
corrected, to reject that part of the description which is
shown to be false.    When that is done the devise will be
held valid if enough remains to identify the subject of the
devise in accordance with facts and circumstances existing
when the will was made, but the rule that nothing can be
added to the description is inflexible and forbids the in-
sertion of anything else in place of that stricken out.    In
all of the decisions it has been emphatically declared that no
word or words can be supplied.    In *Kurtz* v. *Hibner, supra,*
the testator devised two tracts of land in Will county,—one
in section 32 and the other in section 31.    It was held that
the words of description being unambiguous and the thing
devised certain and specific, no extrinsic evidence was ad-
missible to show that the testator intended to devise dif-
ferent lands, and that to make the change insisted upon
would be to make a new and different will.    In *Bingel* v.
*Volz, supra,* the testator devised to his daughter seventy
acres off of the south side of the north half of the north-
west quarter of section 16, which he did not own, but he
did own the south half of the north-west quarter and the
north half of the south-west quarter of the same section.
It was insisted that the intention was to devise the south

seventy acres of the north half of the south-west quarter, and such was the fact; but the court said that if a portion of the description were rejected what was left would not correctly describe the land intended, and that the change involved more than construction and required reformation. In *Williams* v. *Williams, supra,* there was a devise of "forty acres of land, the same being the north-east forty of section 22." The testator did not own any land in the northeast quarter of section 22 nor any tract of forty acres which could be located by striking out a part of the description, but he did own three tracts aggregating about forty-one acres, one of which was situated in the north-west quarter and the other two in the south-west quarter of that section. If the word "north-east" should be stricken out there was no forty-acre tract owned by the testator, and it would be necessary to put three descriptions together to give effect to the intent of the testator, which it was held could not be done. The court said, to permit evidence the effect of which would be to take from the will plain and unambiguous language and insert other language in lieu thereof would violate the established rule of law. In *Lomax* v. *Lomax,* 218 Ill. 629, the testator owned land in section 14 but did not own the south-west fractional quarter of section 24, which he devised. It was held that parol evidence could not be admitted to show a mistake in the section; that the language described a tract of land capable of being readily identified, and that if the word and figures "section 24" or the figures "24" were rejected nothing would remain to indicate in what section the land was located, and it would be necessary to import something into the will by substituting the figures "14."

There is another class of cases where the court has given effect to the intention of the testator by striking out words of false description where it was not considered necessary to substitute anything or to add to the language of the will. In the case of *Decker* v. *Decker,* 121 Ill. 341,

there was a devise of twenty acres off the west half of the north-east quarter of the north-east quarter of section 33. The testator never owned the north-east quarter of the north-east quarter but did own the north-west quarter of the north-east quarter. The court struck out the words "of the north-east quarter" where they occurred the first time as being false, leaving the description "twenty acres of the north-east quarter." The land was then described by quantity and its location as being in the north-east quarter, and the evidence showed that the testator owned only twenty acres in that quarter, which was identified as the land devised. The court said there was nothing· added to the terms of the will; that courts are without the power of substituting for the written words of the testator other and different ·words not used by him, and that the only effect of the decision was to make the devise effective of the twenty acres which the testator owned.

Where the subject of a devise is described by quantity it may be identified by extrinsic proof, and there have been several other cases of that kind where the property could not otherwise have been identified without adding to the will. In *Whitcomb* v. *Rodman,* 156 Ill. 116, the devise was of one hundred acres of land to the testator's son Joseph,—sixty acres off of the west side of the south-east quarter of section 22, and forty acres being the north-west quarter of the south-east quarter of said section. The testator did not own the forty acres as described but did own a forty-acre tract known as the south-east quarter of the north-east quarter of the same section. The court said that while words could not be added to a will, so much as was false in the description might be stricken out if enough remained to identify the land. The court therefore struck out the words "north-west" and "south-east," which left forty acres, it being a quarter of a quarter of section 22, and the testator owned two forty-acre tracts in the northeast quarter. He also devised to his son Edward forty

acres, in which there was a like false description and it was treated in the same way. The circuit court had held that the two forty-acre tracts were devised severally to the sons, but this court said that the two sons took the two tracts undivided, since the separate forties could not be identified without adding to the will, but the error did not affect the plaintiffs in error. The court was enabled to do that on account of the designation of the lands by quantity. In *Huffman* v. *Young,* 170 Ill. 290, there was a devise, by quantity, of 62½ acres off of the east side of the north-east quarter of section 20. The testator owned 62½ acres in the quarter section but not off of the east side. A devise of 62½ acres in a certain government subdivision is sufficient by identifying the portion intended, and the court struck out the words "off of the east side." As the quantity of land was mentioned, the remaining description was sufficiently definite without any addition. In *Felkel* v. *O'Brien,* 231 Ill. 329, the testator devised to his widow a life estate in the north half of the south-east quarter of section 27, containing eighty acres, more or less. He did not own the whole of the north half of the south-east quarter but did own the east half of the quarter section. The court said that the purpose of the testator being to devise land "containing eighty acres," the devise would be given effect by striking out the word "north." In *Collins* v. *Capps,* 235 Ill. 560, the devise was of the west half of the north-east quarter of section 10, containing about seventy-six acres. The court held that by striking out the word "west," which was false, there remained a devise of the half of the north-east quarter, and as the testator only owned in the quarter section seventy-six acres and the description applied to it, the devise was valid. In *Gano* v. *Gano,* 239 Ill. 539, certain words were stricken out of the devise, and it was thought that sufficient then remained to identify the property intended to be devised, and the decision was in accordance with that conclusion.

In some cases there has been a designation of the subject of the devise which was sufficient in itself but followed by a misdescription which could be rejected and leave a valid devise. *Emmert* v. *Hays,* 89 Ill. 11, is an example, where the property devised was described as "being what is known as the Hays farm" but misdescribed as to the section. The added description was rejected as surplusage and the correct description allowed to stand. Also in *Morrall* v. *Morrall,* 236 Ill. 640, there was a devise of "the homestead" followed by an imperfect description, which was rejected. Inasmuch as the devise of the homestead would have been good, it was considered proper to determine the correct description of it. Whatever difference of opinion may have existed in any of these cases related to the application of the rule forbidding reformation of a will and not to the rule itself, which the court always asserted.

In this case the devisees who were defendants, by their answers, alleged mistakes of the testator, and proposed that the letter "W" after the letter "N" in the first two devises, and the word "north" before the word "west" in the third devise, should be stricken out. If that had been done and nothing substituted there would have remained no description of the lands which they alleged the testator intended to devise to them, respectively. Evidence that the testator did not own the lands devised did not tend to show a latent ambiguity or affect the accuracy of the certain and definite description of the will which described lands in existence. It only tended to show mistakes of the testator in making the will, and a mistake is not a latent ambiguity. The mistakes, inaccuracies or deficiencies of a will cannot be corrected by extrinsic evidence, and parol evidence can not be adduced either to add to, contradict or explain the contents of a will. "No principle connected with the law of wills is more firmly established or more familiar in its application than this." (1 Jarman on Wills,—6th ed.—412.) The chancellor, by the decree, struck out the letters

"N. W." in the first two devises and the word "north-west" in the third devise, and when that had been done there was no remaining description of any tract of land, by number of acres or otherwise. To complete either description so as to definitely describe lands owned by the testator and which it was alleged he intended to devise, it became necessary not only to strike out letters and words but to insert others in their places, and this the chancellor did. Not only were the letters "N. W." in the first two devises struck out but the letters "N. E." were inserted in their place, and when the word "north-west" was struck out in the third devise the word "south-west" was inserted in lieu thereof, which were the same changes, in effect, as were proposed by the answers. This was nothing but reformation for the purpose of correcting mistakes of the testator and making the will correspond with his intention, based on the fact that he did not own the lands devised. That such a change in a deed, contract or instrument other than a will, to make it conform to the intention of the maker, would be a reformation has never been questioned, and we do not see how it can be called anything different in case of a will. The changes made to correct mistakes of the testator in describing his lands had the effect to make lands pass to the devisees without a will in writing, which the law says can only pass by a will in writing executed and witnessed in the manner prescribed by the statute.

The decree is reversed and the cause is remanded to the circuit court, with directions to proceed in accordance with the views herein expressed.

*Reversed and remanded.*

DUNN, CARTER and COOKE, JJ., dissenting:

The decree directed to be entered defeats the manifest intention of the testator, takes from his children whom he intended to benefit the provision intended for them and awards the greater part of it to others. The opinion ig-

nores the application of rules of testamentary construction made in numerous decisions of this court in the most recent cases. It concedes what, of course, cannot be reasonably disputed,—that the ambiguity arising from the description of the subjects of the devises by section numbers alone, without indicating the township, range, county or State, may be explained by extrinsic evidence, and that it is explained by evidence that the testator owned the farm lands described in the bill, and no other. This conclusion is reached by the application of the presumption that the testator intended by his will to dispose of his own property and that he did not attempt to dispose of property which he did not own. Though the only words descriptive of the location of the property were "section 12" and "section 9," and those words were entirely indefinite because applicable to a very large number of tracts, yet by reason of the presumption just mentioned there was inherent in the description the idea of ownership by the testator. Since the tracts described in the bill were the only tracts possessing that attribute of ownership, the will necessarily referred to them. The devise includes two particulars of description, viz., ownership by the testator and section number. When the tract is ascertained to which, alone, these two particulars attach, the devise acts upon that tract.

The question of the location of the tracts within the section is somewhat different. The testator owned a quarter of section 12 and a half of a quarter of section 9. Had he devised "the east half of the quarter of section 12, the west half of the quarter of section 12 and the half quarter of section 9," probably no question could arise as to the sufficiency of the description, for the court having ascertained, as the majority opinion does, what sections 12 and 9 were intended by ascertaining in what sections 12 and 9 the testator owned land, could also ascertain what quarter of section 12 and what half quarter of section 9 were intended by ascertaining what quarter and half quarter of the

respective sections the testator owned.  Parol evidence is
admissible of all the circumstances surrounding the testator
and the state and description of his property for the pur-
pose of applying the language used to the conditions exist-
ing, and a devise will not be avoided for any errors in the
description of the devisee or the subject of the devise if
enough remains, after rejecting the errors, to show with
certainty what was intended when considered from the po-
sition of the testator.  It is a recognized rule of construc-
tion of written instruments that a false particular in the
description of the subject matter shall not vitiate the in-
strument, and we have quoted and approved the rule laid
down in Page on Wills, (sec. 819, p. 376,) that if the tes-
tator "owns any real estate which corresponds, in part, to
the description in the will, the court will reject the incorrect
part of the description and will pass the realty conveyed
by the correct description."  *Collins* v. *Capps,* 235 Ill. 560.

The principle has been applied in a great variety of
cases.  In *Decker* v. *Decker,* 121 Ill. 341, the will contained
a devise of "twenty acres off the west half of the north-
east quarter of the north-east quarter of section 33."  The
testator never owned the north-east quarter of the north-
east quarter of the section but did own the north-west quar-
ter of the north-east quarter.  There was no other evidence
affecting this question, and the court construed the will by
rejecting the words "of the north-east quarter" where they
first occurred in the description as a false circumstance
of the description, applied the description to the property
actually owned by the testator, and held that the devise
was of the west half of the testator's land in the north-
east quarter of the section, which was situated in the north-
west quarter of that quarter section instead of the north-
east quarter, as stated in the will.

In *Whitcomb* v. *Rodman,* 156 Ill. 116, there was a con-
troversy over two devises, one of forty acres, being the

north-west quarter of the south-east quarter of section 22, to the testator's son Joseph, the other of forty acres, being the north-east quarter of the south-east quarter of the same section, to his son Edward. The testator owned no part of the north-east quarter of the south-east quarter and only the west three-fourths of the north-west quarter of the south-east quarter, which tract was itself devised by another description. The testator owned the south-west quarter of the north-east quarter and the south-east quarter of the north-east quarter of section 22, which was not described in the will, and no other forty-acre tract in section 22. The devises were construed by rejecting the words "north-west," "south-west," "north-east" and "south-east" as words of false description, and each devise was read as "forty acres, being the * * * quarter of the * * * quarter of section 22." The testator having two, and only two, tracts answering the description, it was held that he devised one of the tracts to each son and that they took and held the tracts undivided. A like conclusion was arrived at in the very similar case of *Moreland* v. *Brady,* 8 Ore. 303, where two devises of lots 1 and 2 in block 187, which the testator did not own, were held to apply to lots 3 and 4 in block 187, which he did own, the numbers "1" and "2" being rejected as false description.

In *Huffman* v. *Young,* 170 Ill. 290, the devise was of sixty-two and one-half acres off of the east side of the north-east quarter of section 20. This was a definite and certain description of a particular tract of land, but the testator did not own it. He did, however, own sixty-two and one-half acres off of the north end of the east half of the north-east quarter of section 20 and no other lands in that quarter section. The words "off of the east side" were rejected as a false description, leaving "sixty-two and one-half acres of the north-east quarter of section 20," which words alone described no land, but in connection with the fact that the testator owned that precise quantity of land

in the section were held sufficiently definite to convey the land the testator owned.

In *Vestal* v. *Garrett,* 197 Ill. 398, a devise was made as follows: "Fifteen acres to David J. Garrett, fifteen acres to Douglas Garrett and fifty acres to Martha A. Vestal of the undivided south-west three-fourths of the south half of the south-west quarter and the west half of the south-east quarter of section 33," etc. This description, in itself, is meaningless and no lands can be located from it. The testator, however, owned the undivided one-third of the south-west quarter and of the west half of the south-east quarter of section 33. The false words of description, "south-west three-fourths of the," were rejected, and the devises held to convey eighty acres of the undivided south-west quarter and west half of the south-east quarter of section 33, being the quantity of land which the testator owned in said tracts.

In *Douglas* v. *Bolinger,* 228 Ill. 23, the devise was of the north half of the north-west quarter of section 12, one-half of which the testator did not own, and it was held to pass the west half of the north-west quarter, which he did own and which was the only part of the quarter section he did own. In *Felkel* v. *O'Brien,* 231 Ill. 329, a devise of the north half of the south-east quarter of section 27, which the testator did not own, was held to pass the east half of the south-east quarter, which he did own. In *Collins* v. *Capps,* 235 Ill. 560, a devise of the west half of the north-east quarter of the section was held to pass the north half of the north-east quarter. In *Gano* v. *Gano,* 239 Ill. 539, the devise was of "the south-east quarter of the north-east quarter and the north-east quarter of the north-west quarter of section 14," etc. The words "quarter of the north-east quarter" being stricken out, there remained "the south-east and the north-east quarter of the north-west quarter of section 14," which tracts the testator owned and which were held to pass by the devise. So in Iowa a devise of the south half of the north-east quarter was held in

*Stewart* v. *Stewart,* 96 Iowa, 620, to convey the south half of the south-east quarter, and a devise of the south-east quarter was held to pass the south-west quarter in *Eckford* v. *Eckford,* 91 Iowa, 54. In Ohio the east half of the south-east quarter was held to convey the east half of the north-east quarter in *Merrick* v. *Merrick,* 37 Ohio St. 126. In *Pate* v. *Bushong,* 161 Ind. 533, a devise of the northwest quarter of section 29 was held to convey the northwest quarter of section 28 and a devise of the east half of the south quarter to convey the east half of the south-west quarter.

In *Vestal* v. *Garrett* it is stated that "if the words of the testator as to the donee and subject of the gift are unambiguous those words cannot be varied by evidence of extraneous facts, however clearly a different intention may appear," and *Kurtz* v. *Hibner,* 55 Ill. 514, *Bishop* v. *Morgan,* 82 id. 351, *Bingel* v. *Volz,* 142 id. 214, and *Williams* v. *Williams,* 189 id. 500, are cited in support of that proposition. In those cases, as well as in *Lomax* v. *Lomax,* 218 Ill. 629, this rule was applied, but in each of the cases cited *supra,* (*Decker* v. *Decker, Whitcomb* v. *Rodman, Huffman* v. *Young, Douglas* v. *Bolinger, Felkel* v. *O'Brien, Collins* v. *Capps,* and *Gano* v. *Gano,*) as well as in the cases cited from other States, the words of the testator as to the subject of the devise were unambiguous, yet evidence of the state and description of the testator's property was received in each case for the purpose of identifying the subject of the devise by enabling the court to read the language of the will from the position of the testator. The cases in which the rule contained in the language quoted from *Vestal* v. *Garrett, supra,* has been disregarded by this court are more numerous than those in which it has been followed, and in that case the cases of *Decker* v. *Decker, supra, Whitcomb* v. *Rodman, supra,* and *Huffman* v. *Young, supra,* in which that rule was disregarded, are cited and not disapproved. It is stated in *Vestal* v. *Garrett* that when "there is a latent

ambiguity in the description of the object or subject of the gift and such ambiguity can be removed by rejecting false words, leaving a complete, intelligible description, it is the duty of courts to do so, as where there are two descriptions, one good and the other bad, the authorities are uniform to the effect that the latter may be rejected." It is only by an application of the presumption that the testator intended to dispose of property which he owned that the court was enabled to apply the unambiguous words descriptive of the subject matter of the respective devises contained in the seven cases above cited from the decisions of this court, and in numerous cases in other courts, to the property actually intended to be disposed of. It is by the application of that presumption that the court, in the majority opinion, ascertains the section intended by the ambiguous description in the will, not by adding to the terms of the will, but by placing itself in the situation of the testator. The presumption mentioned prevails and is given effect in that opinion. It must prevail in every case of construction of a will. The existence of such legal presumption necessarily gives rise to a latent ambiguity in every case where the testator does not own the property described in the devise. In such case there are always at least two circumstances descriptive of the thing, viz., ownership by the testator and location or other descriptive fact mentioned in the devise. The fact that the two do not agree can only be made to appear by extrinsic evidence. The ambiguity is therefore latent and may be removed by extrinsic evidence. "It is settled doctrine that such an ambiguity may arise upon a will either when it names a person as the object of a gift or a thing as a subject of it and there are two persons or things that answer such name or description; or, secondly, it may arise when the will contains a misdescription of the object or subject, as where there is no such person or thing in existence, or, if in ex-

istence, the person is not the one intended or the thing does not belong to the testator. The first kind of ambiguity, when there are two persons or things equally answering the description, may be removed by any evidence that will have that effect,—either circumstances, or declarations of the testator. (1 Jarman on Wills, 370; Hawkins on Wills, 9, 10.) When it consists of a misdescription, as before stated, if the misdescription can be struck out and enough remain in the will to identify the person or thing, the court will deal with it in that way; or, if it is an obvious mistake, will read it as if corrected." *Patch* v. *White,* 117 U. S. 210.

The cases in which the rule has been applied by this court, not only in equity but also at law and not only in cases of wills but also of deeds, that a false particular in the description of the subject matter shall not vitiate the instrument, are of great frequency. Among them are *Miller* v. *Beeler,* 25 Ill. 163, *Myers* v. *Ladd,* 26 id. 415, *Swift* v. *Lee,* 65 id. 336, *Emmert* v. *Hays,* 89 id. 11, as well as cases cited in the principal opinion.

The devises are: To Charles, "all of west ½ of N. W. ¼ of section 12;" to Mary J. MacKender, "east ½ of N. W. ¼ of section 12;" to James, "all of the east half of the north-west ¼ of section 9." These devises must all be held to refer to property which the testator owned. If the letters "N. W.," which constitute the false description, are stricken out of the first two devises and the word "north-west" out of the third, they will read, "all of the west half of ¼ of section 12," "all of east half of ¼ of section 12" and "all of east half of ¼ of section 9." The testator owned "¼ of section 12," and only one. He owned "east half of ¼ of section 9," and only one. When he devised property that he owned, using that language, no doubt can exist as to his intention or his expression of it. Effect should be given to the intention so expressed. If the

north half of the north-west quarter is held to convey the west half of the north-west quarter, as in *Douglas* v. *Bolinger, supra,* why should not the west half of the northwest quarter be held here, under precisely similar circumstances, to convey the west half of the north-east quarter? Why, under exactly the same conditions, should the north half of the south-east quarter be held in *Felkel* v. *O'Brien, supra,* to convey the east half of the south-east quarter, but the east half of the north-west quarter be not held here to convey the east half of the north-east quarter? And if the west half of the north-east quarter is construed in *Collins* v. *Capps, supra,* as conveying the north half of the northeast quarter, what is the reason that the same rule of construction does not apply here, and require the east half of the north-west quarter to be construed as conveying the east half of the south-west quarter? There can be no certainty in the law unless the same rule is applied to the same facts under the same circumstances.